Dan W. BOLTON, III, D.C., Harold Litwiller, D.C. and John Williams, D.C., Plaintiffs,

v.

KANSAS STATE BOARD OF HEALING ARTS, and Curt T. Schneider, Defendants.

Civ. A. No. 78–2263.

United States District Court, D. Kansas.

July 18, 1979.

Roger W. Calton, Dowell, McNearney, Desselle & Calton, Independence, Mo., for plaintiffs.

Wallace M. Buck, Jr., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This matter is presently before the court on plaintiffs' motion for summary judgment and defendants' motion to dismiss. Plaintiffs base their action on the Supreme Court's recent recognition that the First Amendment protects commercial speech in the area of professional advertising. *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). A brief summary of the history of this case is necessary.

Plaintiffs Bolton, Litwiller and Williams are all Kansas chiropractors who wish to advertise. As members of a healing arts profession, plaintiffs are regulated by state statute and the Kansas State Board of Healing Arts rules and regulations. Plaintiffs filed this action on October 19, 1978. The chiropractors seek a judgment declaring K.S.A. 65–2836 and 65–2837 and K.A.R. 100–16 and 100–18 unconstitutional. Injunctive relief is also requested. Plaintiffs contend the statutes and rules abridge their First Amendment rights of freedom of speech and press and are void for vagueness under the due process clause of the Fourteenth Amendment.

On October 27, 1978, Bolton was charged with violating the challenged statutes by the publication of misleading advertisements. Plaintiffs sought a temporary restraining order and a preliminary injunction to enjoin the disciplinary proceedings. A hearing was held on November 29, 1978, with counsel for all parties present. Bolton testified generally as to the information he wished to advertise. The testimony disclosed that nothing Bolton desired to advertise was involved in his prosecution by the state for misleading advertising. No constitutional provision protects false or misleading advertising. *Bates, supra,* 433 U.S. at 383, 97 S.Ct. 2691. Thus, the administrative proceedings were deemed irrelevant to this action. No restraining order or preliminary injunction issued.

Although it is now apparent that counsel did not understand the court's position, we intended to convey to counsel that the challenge to the statutes was too broad. We informed counsel that the court had no intention of striking entire statutes and regulations when only a few severable subsections were relevant to the advertising question. It was agreed that further hearings would not be necessary. A briefing schedule was established and the permanent injunction and declaratory judgment matters were taken under advisement.

Rather than filing the briefs as agreed, plaintiffs moved for summary judgment on December 15, 1978. Plaintiffs reasserted that their First and Fourteenth Amendment rights were infringed by the chal-

lenged statutes. Plaintiffs further maintained that it was "not the function of this Court to design or proscribe a statute which places the regulation of professional advertising within constitutional guidelines." Once again plaintiffs urged the court to find the challenged statutes and rules unconstitutional *in toto*. Defendants offered suggestions in opposition that attacked the standing of plaintiffs, argued that some forms of commercial speech regulations are permissible and contended the statutes do not violate the Fourteenth Amendment. Much of defendants' memorandum focused upon the charges of deceptive and misleading advertising that had been leveled against Bolton.

Plaintiffs' Reply Memorandum narrowed the scope of the constitutional attack. Kansas Statutes Annotated 65–2837 and Articles 16 and 18 of the rules and regulations continued to be challenged, but the attack on K.S.A. 65–2836 was limited to subsections (b), (d), (e) and (f). Plaintiffs contended that standing exists because this is an action for a declaratory judgment. They claim to have such a personal stake in the outcome of the controversy that concrete adverseness is assured. Plaintiffs stress that they are not proceeding upon a First Amendment theory of overbreadth.

At this point a new attorney general took office in Kansas. Wallace Buck replaced Frank Johnson as counsel for the Board and the Attorney General. Also during this period the Kansas Legislature considered various amendments to the statutes in question. Ultimately no substantive amendments were adopted.

Defendants' new counsel filed additional suggestions in opposition to the motion for summary judgment. Therein the Board informed the court that it had suggested an interim committee of the legislature be formed to study this "new, developing area of advertising and how our Kansas statutes might be affected." The suggestions also stated that the challenged rules and regulations had been rescinded at the Board's meeting of February 10, 1979. The court was thus advised that any questions concerning the regulations would be moot. Again, defendants contended plaintiffs lacked standing. The Board then addressed two of the many challenged subsections and suggested readings the court could adopt to uphold their constitutionality. The defendants stated that similar arguments could be made concerning each portion of the challenged statutes, but that previous filings had already discussed these. In fact, we find no previous or subsequent filings that address each challenged subsection.

The hearing on the motion for summary judgment was held on May 17, 1979. Litwiller testified generally as to what he wished to advertise. The Board then informed the court that the rescission of the challenged rules and regulations was "tabled" until the legislature's interim study is completed. The scope of the plaintiffs' action at this point appears to have expanded to once more include challenges to K.S.A. 65–2836(b), (d), (e) and (f), 65–2837, and Articles 16 and 18 of the rules and regulations. The court once again took the matter under advisement.

No longer to the court's surprise, the attorneys refused to leave well enough alone. The defendants filed a motion to dismiss shortly after the hearing. They reasserted their contention that plaintiffs lacked standing to bring this action. Suggestions on this motion have been filed.

A determination of the constitutionality of a statute is a grave matter. We are frustrated by the failure of counsel to assist the court. We decline to request additional briefs on specific subsections of the statutes and regulations only because we have seen no indication that helpful information and analysis would be forthcoming. Nonetheless, there is some merit in plaintiffs' action; we shall not shirk our duty to protect plaintiffs' rights.

Before discussing the merits we must address some preliminary matters. As was explained to counsel at the November 29 hearing, the court intends to address only those parts of the statutes and regulations concerned with professional advertising. A reading of the challenged statutes and reg-

ulations discloses the following. Kansas Statutes Annotated 65–2836 lists the grounds for suspending or revoking the licenses of members of the healing arts professions in Kansas. Kansas Statutes Annotated 65–2837 defines unprofessional conduct by a listing of the behavior included. Kansas Administrative Regulation 100–16 establishes the procedures for revocation or suspension of healing arts licenses, the rules for such proceedings and the grounds for revocation and suspension. Furthermore, it vests the powers of investigation and enforcement of the Kansas Healing Arts Act in the Board and provides for reinstatement of licenses. Kansas Administrative Regulation 100–18 establishes specific types of advertising as unethical and unprofessional conduct. With the exception of K.A.R. 100–18, each of the attacked provisions addresses professional advertising as only one severable part of a larger statutory scheme of regulating the behavior of healing arts licensees. As noted by this court in *Poe v. Menghini,* 339 F.Supp. 986, 996 (D.Kan. 1972), "If the provisions can be deleted from the statute without doing violence to the legislative intent, then the objectionable provisions may be severed. *Fowler v. Gage,* 301 F.2d 775 (10th Cir. 1962)." We see no difficulty in the operation of the statutes and regulations should the properly challenged provisions related to professional advertising be excised.

We next address the issue of standing as raised by defendants' motion to dismiss. Contradictory policies are at work here. The Supreme Court has precluded the use of First Amendment overbreadth analysis in the area of commercial speech, particularly professional advertising. However, the plaintiffs have framed this action as one for a declaratory judgment. It is unquestioned that plaintiffs are healing arts licensees regulated by the challenged statutes and rules. With the exception of the plaintiff Bolton who has been charged by the Board with misleading and deceptive advertising, plaintiffs have not been threatened by the Board with prosecutions under the provisions they are now attacking. As stated in *Bates, supra,* 433 U.S. at 380, 97 S.Ct. at 2707–08,

"The First Amendment overbreadth doctrine, . . . represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court. See, *e. g., Broadrick v. Oklahoma,* 413 U.S. 601, 610 [93 S.Ct. 2908, 2914, 37 L.Ed.2d 830] (1973); *United States v. Raines,* 362 U.S. 17, 21 [80 S.Ct. 519, 522, 4 L.Ed.2d 524] (1960); *Ashwander v. TVA,* 297 U.S. 288, 347 [56 S.Ct. 466, 483, 80 L.Ed. 688] (1936) (Brandeis, J., concurring). The reason for the special rule in First Amendment cases is apparent: An over-broad statute might serve to chill protected speech. First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the *in terrorem* effect of the statute. See *NAACP v. Button,* 371 U.S. 415, 433 [83 S.Ct. 328, 338, 9 L.Ed.2d 405] (1963). Indeed, such a person might choose not to speak because of uncertainty whether his claim of privilege would prevail if challenged. The use of overbreadth analysis reflects the conclusion that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted.

"But the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. As was acknowledged in *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S., at 771 n. 24 [96 S.Ct., at 1830], there are 'commonsense differences' between commercial speech and other varieties. See also *id.,* at 775–781 [96 S.Ct., at 1832–1835] (concurring opinion). Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulations. See *id.,* at 772–773, n. 24 [96 S.Ct., at 1830–1831]. Moreover, concerns for uncertainty in determining the scope of protection are reduced; the advertiser

seeks to disseminate information about a product or service that he provides, and presumably he can determine more readily than others whether his speech is truthful and protected. *Ibid.* Since overbreadth has been described by this Court as 'strong medicine,' which 'has been employed . . . sparingly and only as a last resort,' *Broadrick v. Oklahoma,* 413 U.S., at 613 [93 S.Ct., at 2916], we decline to apply it to professional advertising, a context where it is not necessary to further its intended objective. Cf. *Bigelow v. Virginia,* 421 U.S. [809], at 817–818 [95 S.Ct., at 2222, 2230, 44 L.Ed.2d 600]."

Defendants thus contend that the Court's limitation on the use of overbreadth analysis in the context of professional advertising requires dismissal of this action. Plaintiffs agree that overbreadth analysis is inapplicable, but maintain that they have standing for this action seeking a declaratory judgment and injunctive relief. They are naturally reluctant to place their licenses in jeopardy although they believe they have a right to advertise and that ultimately the Kansas statutes and regulations would be held unconstitutional.

The following analysis of the court in conjunction with our previous determination of the severability of the challenged subsections results in a holding partially sustaining and partially overruling defendants' motion to dismiss. Bolton and Litwiller have both testified in general as to what they wish to advertise. The most important factor in their testimony is that they desire to advertise *truthful* information. Specifically, Bolton stated he would advertise his office location and hours, areas of specialization, fees for routine services, education, and types of therapy offered. Litwiller stated that he would advertise the number of years he has practiced, his office location and hours, his educational background, his specialties, and the services he offers; namely acupuncture, X-ray, physiotherapy and laboratory work. In response to this proposed conduct, counsel for the defendants has stated, "Our Kansas statutes as well as existing law will not prohibit plaintiffs from advertising that would state who they are, their professional education, any stated [sic] approved specialties, if they limited themselves to only offering certain clearly stated services, posting of fees for routine services and alike [sic] advertising that is susceptible of measurement or verification." We fully understand plaintiffs' reluctance in relying upon such assurances since the statement appears to contradict the plain language of certain of the provisions in question.

The general law of standing applies to declaratory judgment actions. *See* Wright & Miller, *Federal Practice & Procedure: Civil* § 2757 (1973). An examination of the substantive claims discloses a logical nexus between the status asserted by plaintiffs and some of the claims sought to be adjudicated. *See, Flast v. Cohen,* 392 U.S. 83, 102, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). These include the claims directly related to professional advertising that would prohibit the proposed conduct of plaintiffs.

■ Furthermore, declaratory judgments require the presence of a justiciable controversy under Article III of the Constitution. By limiting this action to only a consideration of those subsections that would prohibit plaintiffs' proposed conduct, we believe a justiciable controversy exists. Plaintiffs "with a personal stake and interest are arrayed against persons with adverse legal interests in a sufficiently immediate adversary context to warrant declaratory relief." *Poe v. Menghini, supra,* at 990, *citing Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). *See, also, Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). As was the case in *Poe,* we agree that "[i]t is not necessary that plaintiffs have violated the statute or that a prosecution be pending before the constitutionality of a statute may be challenged, so long as actual interference with fundamental rights is alleged or shown." *Poe v. Menghini, supra,* at 990. Having found standing and a concrete case or controversy with respect to those provisions directly related to plaintiffs' proposed conduct, we

need not reach plaintiffs' allegations of standing on behalf of third parties.

This action is thus limited to a consideration of the constitutionality of those provisions regulating the advertising of truthful information. Excluding those that do not arguably concern themselves with professional advertising, the following subsections remain: K.S.A. 65–2836(b), (d), (e), and (f), K.S.A. 65–2837(a), (d), (g), (h), (i), (j), (k), (*l*), (m), (n) and (*o*), and K.A.R. 100–18–1. Kansas Administrative Regulation 100–16 specifies that licenses may be revoked, suspended or limited for the grounds listed in K.S.A. 65–2836 and K.S.A. 65–2837. Consequently, this regulation need not be separately considered. The other subsections attacked by plaintiffs are irrelevant to the issue of professional advertising. No justiciable issue is presented as to these provisions and to this extent defendants' motion to dismiss will be sustained.

Four additional provisions address the issue of misleading advertising. These include K.S.A. 65–2836(d) and K.S.A. 65–2837(d), (g), and (h). *Bates* clearly states that false, deceptive or misleading advertisements are subject to restraint. *Bates, supra,* 433 U.S. at 383, 97 S.Ct. 2691, 2709. Furthermore, *Bates* indicates that high standards for truthfulness may be imposed. "[A]ny concern that strict requirements for truthfulness will undesirably inhibit spontaneity seems inapplicable because commercial speech generally is calculated. Indeed, the public and private benefits from commercial speech derive from confidence in its accuracy and reliability. Thus, the leeway for untruthful or misleading expression that has been allowed in other contexts has little force in the commercial arena." *Id.* The Court stressed that advertising claims as to the quality of services "are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction." *Id.* at 383–84, 97 S.Ct. at 2709.

■ In view of these comments of the Court and the serious nature of the services to be advertised, we are convinced that only the highest standards of truthfulness should apply. We are not concerned here with the "squeezable softness of Charmin" or the advantages of "mountain grown coffee." The practice of puffery—well established in non-professional advertising—has no place in the advertising of healing arts professionals. The well-being of people who may be unsophisticated in health care matters is a compelling interest of the state. The licensor of healing arts professionals has the right and the duty to demand strict adherence to truthful advertising—advertising that is verifiable. Accordingly, K.S.A. 65–2836(d) and 65–2837(d), (g) and (h) are outside the scope of this action. They will be dismissed for the reason that no justiciable issue has been raised. Plaintiffs' attempt to pull these four provisions within the scope of the action by a complaint of vagueness is to no avail. The advertising proposed by plaintiffs is truthful. Any void for vagueness arguments concerning these statutes must await a more specific set of facts.

■ Next we must determine whether any of the remaining subsections regulate conduct outside the scope of that proposed by plaintiffs. Attacks on such subsections must also fail for the reason that no justiciable issue exists. Included are the following:

"65–2837. [Suspension, revocation or limitation of licenses]; 'unprofessional conduct' defined. For the purpose of the preceding section, 'unprofessional conduct' shall consist of any of the following acts: . . . (j) Advertising by means of a large display, lights, signs, or containing as a part thereof, the representation of any portion of the human body. (k) Employing or making use of advertising solicitors or free public press agents. (1) Advertising any free professional services or free examination. (m) Offering discounts or inducements to prospective patients by means of coupons or otherwise to perform professional services during the given period of time or during any period of time for a lesser or more attractive price. (n) Advertising to guarantee any professional service or to perform any operation painlessly. . . . ."

Defendants' motion to dismiss will be sustained as to these subsections for lack of standing and failure to raise a justiciable issue.

Having resolved the preliminary matters, we now address plaintiffs' motion for summary judgment and the merits of this action. It is clear from the briefs and the comments of counsel at the hearings that no question of fact remains. Defendants' suggestions in opposition to the motion for summary judgment have addressed the standing of plaintiffs and have argued the merits of plaintiffs' action. No claim has been made that factual issues remain in contention. The parties have had more than ample opportunities to argue the applicable law in their briefs and at the hearings. We are now prepared to rule on the merits of the provisions determined to be properly before us. We shall consider them individually.

Kansas Administrative Regulation 100–18–1 reads as follows (the paragraphs have been designated by letter for reference):

"100–18–1. Advertising. (a) It is unethical and unprofessional for a licensee in any branch of the healing arts to solicit professional employment by word of mouth, by letters, circulars, pamphlets, newspapers, magazines, telephone books, radio, television, billboards, sign boards, hand bills, placards, posters, touters, solicitors, or any other form of advertising or by communication or interviews not warranted by personal relations.

(b) It is unethical and unprofessional for a licensee in any branch of the healing arts to solicit professional employment by any indirect advertisement employing any of the foregoing methods of advertising or by furnishing or inspiring magazine, newspaper, radio or television comments or procuring one's photographs to be used or published in connection with treatment of cases or persons.

(c) The customary use of simple professional cards is proper.

(d) In cities and towns where it is customary for the local newspapers to carry a professional directory or register, a licensee may carry a listing which sets forth:

1. His name.
2. The name or initials designating the branch of the healing arts in which he is licensed.
3. Address.
4. Telephone number.
5. If the licensee engages in a professionally recognized speciality, then the listing may carry the designation of such professionally recognized specialty.

(e) Listings may be carried in the yellow pages of telephone directories which set forth the licensee's name, address and telephone number and such listing may be under a heading designating a professionally recognized specialty.

(f) It is unethical and unprofessional for any person licensed in any branch of the healing arts to use any type of advertising hereinbefore referred to which solicits patronage ostensibly for another purpose, which other purpose is to be conducted or carried out at the office, address or telephone number where the licensee maintains his office and telephone for the practice of the branch of the healing arts in which he is licensed.

(g) Any person licensed to practice any branch of the healing arts in the state of Kansas knowingly violating any of the foregoing provisions of this article may be subjected to appropriate disciplinary action by the Kansas state board of healing arts, which action may include suspension or revocation of license."

The regulation is tantamount to a blanket ban on advertising. Such a blanket ban was held to infringe upon a lawyer's First Amendment rights in *Bates, supra*. We find no distinction between lawyers and health care professionals in the area of advertising and defendants have offered none. For this reason paragraphs (a) and (b) must be found unconstitutional insofar as they establish grounds for revoking, suspending, or limiting healing arts licenses based upon truthful professional advertising. Paragraph (b) relates directly to (a) and may not be severed. Paragraphs (c), (d), (e), (f) and (g) are severable from the first two paragraphs. They establish permitted means of

advertising, forbid solicitation of patronage ostensibly for another purpose and provide penalties for knowing violations. In light of today's opinion, the advertising permitted by K.A.R. 100–18–1 no longer constitutes the exclusive permissible means of advertising.

■ We next turn to the challenged statutory subsections remaining. Kansas Statutes Annotated 65–2836(e) permits the Board to revoke, suspend or limit a license of a licensee who uses and distributes literature advertising professional abilities. To the extent that such advertisements are truthful and capable of verification, such a ban is unconstitutional under the rationale of *Bates* and *Virginia Pharmacy Board.*

■ Subsection (f) permits revocation, suspension or limitation of licenses on the ground of unethical advertising practices. Such practices were defined by K.A.R. 100–18–1. Because the court has severed the offending portions of the regulations, unethical advertising is limited to the solicitation of patronage ostensibly for other purposes. Restraints upon misleading advertising are permitted; K.S.A. 65–2836(f) as now defined by K.A.R. 100–18–1, designated paragraph (f), is constitutional. The definition in the regulations defeats plaintiffs' Fourteenth Amendment void-for-vagueness contention.

■ Kansas Statutes Annotated 65–2837(a) sets forth "solicitation of professional patronage, or profiting by the acts of those representing themselves to be agents of the licensee" as an act constituting unprofessional conduct. Absent some artificial restriction imposed by the court, the provision constitutes virtually a total ban on advertising. To the extent that the provision bars truthful advertising through media the subsection violates the First Amendment. We note that the issue of in-person solicitation was not decided in *Bates.* The Court indicated that in-person solicitation might be so inherently misleading as to warrant restriction. *Bates, supra,* at 383–84, 97 S.Ct. 2691. Since *Bates,* the Court has found disciplinary rules forbidding in-person solicitation of fee paying clients to be constitutional. *Ohralik v. Ohio*

*State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); compare In re *Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). Although we do not reach the issue here, the considerations of undue influence, intimidation and overreaching would seem applicable in the healing arts professional-patient context. *See Ohralik, supra.*

■ Kansas Statutes Annotated 65–2837(i) establishes the advertising of prices for professional service to be unprofessional conduct. The posting of fees as required by law is specifically deemed not to be advertising. Kansas Statutes Annotated 65–2837(*o*) provides that individually advertising any price or prices of corrective devices or services constitutes unprofessional conduct. The advertising of attorney's fees was the precise question before the Court in *Bates.* Defendants have offered no compelling state interest distinguishing healing arts professionals from legal professionals. So long as the advertising is restricted to routine services and is truthful, the Fifth Amendment commands that it be permitted. These subsections must be held unconstitutional.

■ Finally, we return to subsection (b) of K.S.A. 65–2836. This subsection establishes immoral, unprofessional or dishonorable conduct and professional incompetency as grounds for suspending, revoking or limiting a healing arts professional's license. Subsection (b) must be read in conjunction with K.S.A. 65–2837 defining unprofessional conduct. Having pared the offending provisions from the definitional statute, the subsection is no longer tainted. Based on the limited fact situation before us it may stand.

In conclusion, the policy considerations and concerns of the Supreme Court have been indicated in *Bates, Virginia Pharmacy Board, Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), and other professional advertising cases. We encourage the legislature's interim study committee to take

note of these decisions and draft statutory provisions that adequately protect the First Amendment rights of healing arts professionals and the equally important rights of citizens to receive truthful information in a non-coercive environment.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be and hereby is overruled as to K.S.A. 65–2836(b), (e) and (f), K.S.A. 65–2837(a), (i) and (o) and K.A.R. 100–18–1 and sustained as to all other statutory and regulatory provisions challenged by plaintiffs.

IT IS FURTHER ORDERED that the first two paragraphs of K.A.R. 100–18–1, K.S.A. 65–2836(e) and K.S.A. 65–2837(a), (i) and (o) be and hereby are declared unconstitutional to the extent that they infringe upon plaintiffs' First Amendment right to advertise truthfully. There being no reason to suspect that the defendants will not abide by the final decision of this court, a permanent injunction is not deemed necessary. Counsel for plaintiffs is directed to prepare, circulate and forward for the court's approval and signature, a Journal Entry of Judgment reflecting the holding of the foregoing Memorandum and Order.