**Bart DURHAM**

v.

**Hon. Ray L. BROCK, Jr., Chief Justice; Hon. Joseph W. Henry, Justice; Hon. Robert E. Cooper, Justice; Hon. William H. D. Fones, Justice; Hon. William J. Harbison, Justice, all of the Supreme Court of Tennessee, and Hon. William E. Leech, in his official capacity as Attorney General of the State of Tennessee.**

**No. 80–3019–NA–CV.**

United States District Court, M. D. Tennessee, Nashville Division.

March 18, 1980.

---

Bart C. Durham, III, pro se.

William M. Leech, Jr., Atty. Gen., Claudius C. Smith, Asst. Atty. Gen., Nashville, Tenn., for defendants.

### MEMORANDUM

MORTON, Chief Judge.

The plaintiff in this action seeks declaratory and injunctive relief against two portions of amendments adopted by the Tennessee Supreme Court and thereby made a part of the state's Code of Professional Responsibility. The amendments have the effect of limiting the content of lawyer advertising which the plaintiff contends are regulations violative of first amendment

protections which are guaranteed to legitimate commercial speech.

A federal question is presented in which the value of the right asserted exceeds $10,000 exclusive of interest and costs. Jurisdiction is accordingly conferred by 28 U.S.C. §§ 1331, 1343 and relief authorized by 28 U.S.C. § 2201 and Fed.R.Civ.P. 57. Venue is proper under 28 U.S.C. § 1391(b).

The two challenged regulations are an Ethical Consideration and a Disciplinary Rule of Tennessee's Code of Professional Responsibility (Code). They state:

### I.

EC 2–8 is amended as follows: . . . lawyers may not specify in any advertisement (1) one or more fields of law in which he or she practices except for the purpose of designating fees for routine legal services allowed under the decision of the Supreme Court in *Bates v. State Bar of Arizona*, [433 U.S. 350], 97 S.Ct. 2691 [53 L.Ed.2d 810] (1977) . . . . .

### IV.

DR 2–101(B)(2) is amended by adding thereto the following:

however, no such advertisement shall indicate areas of practice or specialization except when listing routine legal services accompanied by a fee schedule for such services.

Tennessee Supreme Court Order of December 19, 1979.

The plaintiff has alleged that he is a licensed attorney who has been advertising his services since July of 1977 in accordance with *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) and as further defined by the Tennessee Supreme Court in an amendment dated April 15, 1978, 563 S.W.2d XXV–XXXVIII. The plaintiff is doing business with three other attorneys and an office staff as the "Legal Clinic of Bart Durham." The plaintiff asserts that the great majority of the cases accepted by the clinic are in the five areas of divorce, bankruptcy, criminal law, injuries on the job, and automobile accidents.

216

He states that very few cases are accepted in the fields of labor, civil rights, taxation, landlord and tenant, administrative, corporate, real estate, contracts and other areas.

The media employed for the plaintiff's advertisements include newspapers, radio, television, and the yellow pages of the telephone directory.

The defendants have the responsibility for the licensing and regulation of attorneys and failure to abide by those regulations may result in suspension or disbarment from the profession, in addition to other sanctions.

In short, the plaintiff wishes to advertise the areas of law to which he has limited the majority of his practice and do so without also listing a price for the fields advertised. It would also appear that the plaintiff wishes to advertise routine legal services for which he seeks clients, also without listing a fee for those services. The plaintiff claims that this form of commercial speach is protected by the first amendment and may not be properly banned.

The defendants have asserted that such advertising would be false, misleading or deceptive and that, under the *Bates* decision, it may be properly regulated by the state.

*Standing*

■ The threshold question in this matter is one of standing to sue. It is the position of the defendants that the plaintiff has not been prosecuted or threatened with prosecution and that, therefore, there is no case or controversy within Article III of the Federal Constitution. In analyzing the question of standing, the court is faced with both the question of constitutional limitations on the jurisdiction of the federal courts as well as prudential limitations on the exercise of that jurisdiction in the sound discretion of the court. *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed.2d 1586 (1953). In the former dimension, the question is one of justiciability, i. e., whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant the invocation of federal jurisdiction and the remedial powers thereof.

*Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Federal jurisdiction, then, will lie only where the plaintiff has suffered some "threatened or actual injury resulting from the putatively illegal action . . . ." *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The personal stake in the outcome is "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663, 678 (1962). *See generally, Warth v. Seldin*, 422 U.S. 490, 498–502, 95 S.Ct. 2197, 45 L.Ed.2d 343, 354–56 (1975).

It is true that, in this case, the plaintiff has not been prosecuted (as were the plaintiffs in *Bates*) nor has he been directly threatened with prosecution. In *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Supreme Court found that Georgia–licensed physicians had standing to challenge the constitutionality of the abortion laws of that state. *Id.* at 188, 93 S.Ct. at 745–746, 35 L.Ed.2d at 210. The physicians "do have standing despite the fact that the record does not disclose that any of them has been prosecuted or threatened with prosecution, for violation of the State's abortion statutes. The physician is the one against whom these criminal statutes operate . . . [and the statutes] therefore assert a sufficiently direct threat of personal detriment. [The doctors] should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Id. citing Crossen v. Brekenridge*, 446 F.2d 833, 839–40 (6th Cir. 1971). *See also Planned Parenthood Association v. Fitzpatrick*, 401 F.Supp. 554, 561–62 (E.D.Pa.1975), *vacated, Beal v. Franklin*, 428 U.S. 901, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976) *and aff'd, Franklin v. Fitzpatrick*, 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976).

■ In the case sub judice, the plaintiff faces severe penalties for the exercise of

what he believes to be a constitutional right illegally abridged by the State of Tennessee. These penalties range up to and include being barred from the practice of a learned profession. The court notes that the standing hurdle is formidable in this type of case and that the major prior restraint cases do not involve declaratory relief.[1] *See, e. g., Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). Moreover, *Bates* refused to apply the doctrine of "overbreadth," a traditional one in the area of first amendment rights, to commercial speech. 433 U.S. at 380–81, 97 S.Ct. at 2707–2708, 53 L.Ed.2d at 833–34. As such, a person may not challenge a commercial speech regulation on the grounds that it may be applied unconstitutionally in circumstances other than those before the court. *Id.* at 380, 97 S.Ct. at 2707, 53 L.Ed.2d at 833. The reasoning of the court was that commercial speech is different from political or ideological speech. Since commercial speech is directly connected with economic well–being, it is unlikely that it will be crushed by overbroad regulation. *Id.* at 381, 97 S.Ct. at 2707–2708, 53 L.Ed.2d at 834. More importantly, the Court reasoned that the "advertiser seeks to disseminate information about a product or service that he provides, and presumably he can determine more readily than others whether his speech is truthful and [therefore] protected." *Id.* But that approach subsumes the idea that the speaker will have a choice, i. e., to speak if truthful and non–deceptive or not speak if misleading. That is not the case here. The plaintiff asserts that his advertisement is truthful, not deceptive, and not misleading. Therefore, the plaintiff claims that his

protected speech has been banned and that he has standing to litigate the issue.

It is axiomatic that on a motion[2] to dismiss for lack of standing the court must accept as true all the material allegations of the complaint and construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343, 356 (1975).

In *Poe v. Menghini,* 339 F.Supp. 986 (D.Kan.1972), it was stated that "[i]t is not necessary that plaintiffs have violated the statute or that a prosecution be pending before the constitutionality of a statute may be challenged, so long as the actual interference with fundamental rights is alleged or is shown." *Id.* at 990. *See also Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (teacher seeking declaratory and injunctive relief claiming that state statute making the teaching of evolution a criminal act was unconstitutional).

This was the position taken in a declaratory judgment case based on *Bates, Bolton v. Kansas State Board of Healing Arts,* 473 F.Supp. 728 (D.Kan.1979). There, the court analyzed the standing requirement under *Bates* and concluded that chiropractors, who believed that they had a constitutional right to truthfully and non–deceptively advertise, did not have to place their licenses in jeopardy in order to challenge the constitutionality of the state's ban. They were permitted to pursue declaratory and injunctive relief.[3] *Id.* at 732–34.

Accordingly, the court concludes that the plaintiff has "a personal stake and interest [which is] arrayed against persons with adverse legal interests in a sufficiently immediate adversary context to warrant declaratory relief" consideration.[4] *Poe v.*

---

1. Of course, it is likely that the doctrine of prior restraints is wholly inappropriate given the greater hardiness and objectivity of commercial speech. *See Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346, 364 n. 24 (1976).

2. The motions in this case were adopted and argued at the hearing on the merits.

3. The *Bolton* case is distinguishable in that one of the plaintiffs was charged with a violation of the challenged statutes after the challenge was begun, but that is not considered controlling.

4. Since not all advertising, but only that without prices, has been proscribed by the regulation, the court finds it unnecessary to reach a conclusion as to whether the plaintiff suffered actual damages in the form of lost revenues

*Menghini*, 339 F.Supp. 986 (D.Kan.1972) *citing Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). *See generally* Wright & Miller, *Federal Practice and Procedure*, §§ 2757, 2767 (1973).

## Abstention

■ The defendants next argue that this court not only abstain, but dismiss under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The defendants have cited no case in support of their proposition in the area of first amendment freedom and the court is aware of none. For a cogent analysis of why the doctrine of abstention under *Younger* does not apply to challenges of attorney advertising regulations, *see Consumers Union of the United States v. American Bar Association*, 427 F.Supp. 506, 513–16, (E.D.Va.1976) (per Merhige, J., with one judge specially concurring), *vacated*, 433 U.S. 917, 97 S.Ct. 2993, 53 L.Ed.2d 1104 (1977) for reconsideration in light of *Bates*.

Accordingly, the court will decide the issue on the merits.

## Injunctive Relief

■ Federal court injunctions against state prosecutions constitute extraordinary judicial measures which are appropriate only in "special circumstances." *Younger v. Harris*, 401 U.S. 37, 43–49, 91 S.Ct. 746, 750–753, 27 L.Ed.2d 669, 675–78 (1971). In order to obtain an injunction, the plaintiff must show more than merely the threat of injury that is "incidental to every criminal proceeding brought lawfully and in good faith." *Douglas v. City of Jeanette*, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1330 (1943). *See also Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ Here, the plaintiff has not alleged that the regulation in question has been used against him in bad faith or that it has been an instrument of harrassment or intimidation in the exercise of protected constitutional freedoms. The allegation of a chilling effect upon first amendment rights is insufficient for injunctive relief. *Y.W.C.A. v. Kugler*, 342 F.Supp. 1048 (D.N.J. 1972), *vacated and remanded*, 475 F.2d 1398 (3d Cir. 1973), *and affirmed*, 493 F.2d 1402 (3d Cir.), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 885 (1974). Moreover, there is no indication that state officials will fail to enforce and protect the plaintiff's constitutional rights as they are determined by this court nor are there indications that they will ignore those rights. *Id.* Therefore, the special circumstances necessary for the issuance of an injunction are not present and that claim for relief is hereby denied.

## Declaratory Relief

The issue here is a narrow one. May the State of Tennessee, by and through its Supreme Court, promulgate a rule which forbids an attorney from advertising routine legal services or fields of law to which practice is limited unless the advertisement is accompanied by a listing of the price for such services consistent with the first and fourteenth amendments?

This question, like many others,[5] was not answered by *Bates*. Other substantial questions left open in this area include who has the burden of proof, whether there is a presumption of constitutionality, and the scope or extent of the emerging protection of commercial speech under the first amendment. Comment, *The Commercial Speech Doctrine and the First Amendment*, 12 Tulsa L.J. 699, 707 (1977). Also unresolved is the very fundamental question of what *are* routine legal services?

---

which would form an alternative basis for standing. There is nothing in the record on this point, and the court refuses to speculate.

**5.** For example, the Supreme Court reserved the question of whether a lawyer could advertise the quality of the service offered and whether in–person solicitation. is permissible. As for the latter, see *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); Note, *Attorney Solicitation: The Scope of State Regulation After Primus and Ohralik*, 12 U.Mich.J.L.Ref. 144 (1978).

It is unnecessary to retrace the entire evolution of commercial speech and its relationship with the first amendment,[6] but a review of *Bates* would seem appropriate. In essence, *Bates* focuses on the right of consumers to be recipients of commercial information rather than the right of commercial speakers to speak. "The listener's interest is substantial: the consumer's concern for the free flow of commercial speech may be far keener than his concern for urgent political dialogue." 433 U.S. at 364, 97 S.Ct. at 2699, 53 L.Ed.2d at 823. Such speech on the one hand may involve important issues of the day,[7] or it may inform the public as to the availability, nature, and prices of products and services which performs "an indispensable role in the allocation of resources in a free enterprise system."[8] *Id.* Because such speech serves valuable individual and societal interests in facilitating reliable and informed decision-making it is entitled to first amendment protection. *Id., Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). This, of course, does not mean that commercial speech is not subject to reasonable regulation. It is. The state may insure that "the stream of commercial information flow[s] cleanly as well as freely." *Id.* at 772, 96 S.Ct. at 1831, 48 L.Ed.2d at 365.

The Supreme Court has thus far recognized only three categories of permissible regulation of commercial speech consistent with the first amendment. These are:

(1) reasonable time, place, and manner restrictions;

(2) prohibitions of false, deceptive, or misleading advertisements; and

(3) prohibitions on the advertising of illegal transactions.

*Bates* embraces and adopts all three limitations. Because the case at bar clearly falls within the second category above, that will be the focus of the ensuing discussion.

False or misleading speech, commercial or otherwise, has never been protected for its own sake. 425 U.S. at 771, 96 S.Ct. at 1830–1831, 48 L.Ed.2d at 364. "Advertising that is false, deceptive, or misleading of course is subject to restraint." 433 U.S. at 383, 97 S.Ct. at 2709, 53 L.Ed.2d at 835. That much is made clear by *Bates*. Thereafter, the channel markers are indistinct. The Court did not make clear the test employed to find that the *Bates* ad was not false or misleading or the standards against which it was held.[9] Nevertheless, it does provide a departure point for the court: That is, under the second classification above, unless an advertisement is false, misleading or deceptive, it may not be banned.

■ That must also be the initial function of this court. Before doing so, however, several preliminary questions must be determined. First, who has the burden of proof? Traditionally, in free speech cases, once a state regulation appears to impinge on first amendment rights, the burden of proof is upon the state to show a compelling state interest in such regulation.[10] One commentator has observed:

**6.** *See generally*, Comment, *The Commercial Speech Doctrine and the First Amendment*, 12 Tulsa L.J. 699 (1977); Note, *Constitutional Law–First Amendment–Commercial Speech–Lawyer Advertising Protected by the First Amendment–Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), 11 Creighton L.Rev. 577 (1977).

**7.** *Citing Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

**8.** *Citing FTC v. Procter & Gamble Co.*, 386 U.S. 568, 603–04, 87 S.Ct. 1224, 1242–1243, 18 L.Ed.2d 303, 324–25 (1967) (Harlan, J., concurring).

**9.** "In the usual case involving a restraint on speech, a showing that the challenged rule served unconstitutionally to suppress speech would end our analysis." 433 U.S. at 379–80, 97 S.Ct. at 2707, 53 L.Ed.2d at 833. However, the Court in *Bates* determined that the "overbreadth" doctrine does not apply to commercial speech and, hence, it had to decide whether the particular advertisement before it was false, misleading or deceptive. *Id.* at 379–81, 97 S.Ct. at 2706–2708, 53 L.Ed.2d at 833–34. *See also Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979).

**10.** *See, e. g.*, *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

[T]here are indications in *Bates* that the Court's attitude toward future restrictions in the area of commercial speech will not be tolerant. The burden of persuasion appears to lie with the proponents of continued restrictions, rather than on the proponents of advertising, and that burden appears to be a fairly heavy one.[11] The State acceded to this position at the hearing on this matter and was first to present its evidence. Therefore, the court finds that the defendants' initial burden is to prove by a preponderance of the evidence that advertisements of the type which are prohibited are inherently false, misleading, or deceptive.

The next question which must be answered is, by what test, formula or standard is the proscribed advertising to be evaluated? The Supreme Court may have unwittingly supplied guidance in a footnote. The Court states therein: "The determination of whether an advertisement is misleading requires consideration of the legal sophistication of its audience." 433 U.S. at 383, 97 S.Ct. at 2709 n. 37, 53 L.Ed.2d at 835 n. 37. The Court cites the Federal Trade Commission (FTC) case of *Feil v. FTC*, 285 F.2d 879, 897 (9th Cir. 1960). This court finds no impediment to the adoption of the tests and standards which the FTC has developed in cases involving deceptive advertising pursuant to 15 U.S.C. § 45.

█ In looking to the most restrictive of these standards, i. e., those most protective of the public, it appears that the test is not whether an advertisement *does* deceive, but rather whether it is *capable* of deceiving. Courts have held that the FTC may look both to the meaning of the words and all that is reasonably implied, not only to a careful reader, but it may envision that advertisement as it would be viewed by the public generally–including the ignorant, unthinking, and credulous. *Niresk Industries, Inc. v. FTC*, 278 F.2d 337 (7th Cir.), *cert. denied*, 364 U.S. 883, 81 S.Ct. 173, 5 L.Ed.2d 104 (1960). In the *Feil* case, *supra*, the court held that the FTC could "limit the use of language [in advertisements] which, although seemingly innocuous to the expert was likely to deceive the unlearned and gullible." *Feil v. FTC*, 285 F.2d 879, 897 (9th Cir. 1960).

The defendants have offered no proof tending to show that an advertisement of routine legal services or of fields of practice without prices is deceptive. However, the court notes that the determination of a capacity to deceive may be made without consumer testimony and it may be made from the point of view of the least sophisticated. *Exposition Press, Inc. v. FTC*, 295 F.2d 869 (2d Cir. 1961), *cert. denied*, 370 U.S. 917, 82 S.Ct. 1554, 8 L.Ed.2d 497 (1962). It has been said that the FTC need not hear witnesses attest to the deceptive nature of the advertisement but may determine the matter through its own inspection and analysis. *United States Retail Credit Association v. FTC*, 300 F.2d 212 (4th Cir. 1962).

Coupled with the foregoing is a second concept, however, based upon first amendment considerations. That is, any regulation of potentially deceptive advertising must be narrowly drawn. In the area of commercial speech, "the remedy for the perceived violation [of the FTC Act] can go no further in imposing a prior restraint on protected commercial speech than is reasonably necessary to accomplish the remedial objective of preventing the violation." *Beneficial Corp. v. FTC*, 542 F.2d 611, 619 (3rd Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977).

11. Hellman, *Oklahoma Supreme Court's Rules on Lawyer Advertising: Some Practical, Legal and Policy Questions*, 31 Okl.L.Rev. 509, 544 (1978). In *Consumers Union of the United States v. American Bar Association*, 427 F.Supp. 506 (E.D.Va.1976), *vacated*, 433 U.S. 917, 97 S.Ct. 2993, 53 L.Ed.2d 1104 (1977) for reconsideration in light of *Bates*, Judge Merhige, with one judge specially concurring, held:

The question in the instant action becomes, then, whether the regulation imposed by the State Bar on legal advertising in the Commonwealth of Virginia is a permissible regulation of commercial speech. Since commercial speech is admittedly protected by the First Amendment, the state carried a heavy burden of justifying incidences of its curtailment.
427 F.Supp. at 518.

At first blush, this might appear to conflict with the overbreadth discussion in *Bates.* Therein, the Court reasoned:

[T]he justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. [T]here are "commonsense differences" between commercial speech and other varieties. Since advertising is linked to commercial well–being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation. Moreover, concerns for uncertainty in determining the scope of protection are reduced; the advertiser seeks to disseminate information about a product or service that he provides, and presumably he can determine more readily than others whether his speech is truthful and protected. Since overbreadth has been described by this Court as "strong medicine," which "has been employed . . . sparingly and only as a last resort," we decline to apply it to commercial advertising, a context where it is not necessary to further its intended objective.

433 U.S. at 381, 97 S.Ct. at 2707, 53 L.Ed.2d at 834 (citations omitted).

It is apparent from the Court's analysis that it applies to the advertiser who must ferret out what is protected speech and what is not. Clearly, that presupposes that once an advertisement is determined to be protected by the first amendment, it may be distributed to the public. That is not the case here. The regulation being challenged does not permit that determination; it flatly prohibits an advertisement based on content. While it is true that the state may regulate false, deceptive and misleading advertisements, it may not go further and prohibit protected speech. "A remedy [or regulation] for deceptive advertising which is broader than is necessary to prevent future deception or correct past deception is impermissible under the First Amendment."

*Encyclopaedia Britannica, Inc. v. FTC,* 605 F.2d 964, 972 (7th Cir. 1979). *See also Standard Oil of California v. FTC,* 577 F.2d 653, 662 (9th Cir. 1978).

■ As for a presumption of constitutionality on the part of the challenged regulations, none will be entertained by the court. While state supreme court regulations and legislative and congressional acts are generally entitled to a presumption of constitutionality,[12] the preferred position of the first amendment greatly weakens such a presumption involving that amendment. *See, e. g., Turchick v. United States,* 561 F.2d 719, 724 (8th Cir. 1977); *United States v. Dellinger,* 472 F.2d 340 (7th Cir. 1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). *See generally,* Cahn, *The Firstness of the First Amendment,* 65 Yale L.J. 464 (1956). It is also inappropriate to apply such a presumption where the practical effect of so doing would be to greatly reduce the burden of proof on the part of the state in justifying its speech restrictions.

Finally, the court must address the question of what constitutes a "routine legal service."[13] The Tennessee Supreme Court has previously declined to define that term. *In re Petition for Rule of Court Governing Lawyer Advertising,* 564 S.W.2d 638, 644 (Tenn.1978). To the court's knowledge, no other court has ventured a proposed meaning. It is deemed necessary to define the term because both the ethical consideration and the disciplinary rule incorporate and rely upon that language.

The Tennessee Supreme Court has approached the problem from the standpoint of a given lawyer's expertise in a particular field. Under such an approach, the court concluded that patents or copyrights may be routine to some lawyers, and, if they were competent in those fields, they could

---

**12.** However, the Supreme Court has recognized that enactments are subject to different presumptions of validity. *Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269, 274 (1979).

**13.** What is a "field of law" would not appear to present much controversy. It would be essentially demarcated as the law school curriculum: contracts, administrative law, domestic relations and the like.

advertise them.[14] This is clearly not the import in *Bates*. *Bates* is not a decision for the benefit of the bar; it is a decision for the benefit of consumers of legal services, and it is from their standpoint that the problem must be approached. Reading *Virginia Pharmacy* and *Bates* together, there emerges a pattern as to the types of goods and services which the Supreme Court had in mind. In short, they are essentially standardized. The court in *Bates* acknowledged that legal services are not fungible per se, but it noted that there are a number of services which may be performed which are not so unique that a fixed price may not be set for those services in advance. The Court observed that " 'rarely are two haircuts identical, but that does not mean that barbers cannot quote a standard price. Lawyers perform countless relatively standardized services which vary somewhat in complexity but are not so much as to make each job utterly unique.' " 433 U.S. at 373 n. 27, 97 S.Ct. at 2703 n. 27, 53 L.Ed.2d at 829, *quoting* Morgan, *The Evolving Concept of Professional Responsibility*, 90 Harv.L. Rev. 702, 714 (1977). So while it is literally true that legal services are not fungible in the sense that one pre–packaged pharmaceutical may be replaced upon the shelf by another, still, that is the idea which underlies "routine legal services." They must be objectively capable of standardization so that any licensed attorney at law is deemed qualified to perform them, and secondly, they are so uniform in the requirements of the service that they vary very little in their performance. By this definition, a routine legal service could include such things as a form contract, mortgage preparation, or a title opinion. *See Kentucky Bar Association v. Stuart*, 568 S.W.2d 933 (Ky.1978). The bar retains the right to define those services; but, until it does, the foregoing test at least provides guidance in assessing the challenged regulations. 433 U.S. at 373 n. 28, 97 S.Ct. at 2704 n. 28, 53 L.Ed.2d at 829.

With these parameters established, the court must address the question of whether the State of Tennessee may constitutionally forbid lawyers to advertise routine legal services or fields of law to which their practice is limited without also advertising a price for the services involved. In order to proscribe such advertising based on content, it must, according to *Bates*, be found to be false, deceptive, or misleading. 433 U.S. at 383, 97 S.Ct. at 2708–2709, 53 L.Ed.2d at 835. Secondly, if such advertisements are found to be deceptive, the least drastic alternative must be employed to remedy the defect consistent with the first amendment.[15]

That the states have broad power to regulate the practice of law within their respective borders is beyond dispute. *United Mine Workers v. Illinois Bar Association*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426, 431 (1967). "But it is equally apparent that broad rules framed to protect the public and to preserve respect for the administration of justice can in their actual operation significantly impair the value of [first amendment] freedoms." *Id.*

Here, it is alleged that the State of Tennessee overstepped those broad boundaries and imposed a regulation which absolutely prohibits a form of speech protected by the first amendment as made applicable to the

14. It has been said that "one man's poison is another man's meat." So with routine legal services. The procurement of patents and copyrights is "routine" to the practitioners in those fields but is wholly beyond the ken of the general practitioner. A so–called simple will or simple deed or a simple divorce, contested or not, may present significant tax problems that are routine to some practitioners and yet beyond the ability of others.

Instead of permitting advertisement of "routine legal services," the rule we adopt today permits the advertisement of any legal service, restricted only by the guidelines and standards contained in various portions of the Code.
564 S.W.2d at 644. It is the change, with emphasis upon advertising only routine legal services with prices, which requires that the term be defined.

15. In addition to the cases cited above, *see generally* Hellman, *supra*, n. 10 at 547–51; Note, *First Amendment Limitations on FTC Corrective Advertising Orders*, 66 Geo.L.J. 1473 (1978).

states through the fourteenth. *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

It may first be concluded, in analyzing the propriety of the regulation, that the prohibited advertisements are not false. The only contention is that advertisements which list only fields of practice or proffered routine legal services are deceptive or misleading.

> Such statements are calculated to convey to the lay public the impression that the lawyer is a specialist and, therefore possesses particular expertise in the advertised field. At the present time so advertising, be it ever so well intentioned, would be deceptive and misleading.
>
> . . . . .
>
> When we permit a lawyer to advertise, we must insure that the public is not victimized by any form of advertising that has the effect of a holding out to the public of special or unique qualification or expertise.

*In re Petition for Rule of Court Governing Lawyer Advertising*, 564 S.W.2d 638, 645 (Tenn.1978). The defendants do not give this court the benefit of the analysis used in reaching that conclusion, nor did they do so at the hearing in this matter. They also did not explain why offering a routine legal service by way of an advertisement with a price is not deceptive but omission of the fee is. Finally, the defendants' regulation permits an attorney to state the areas or fields of law in which he or she practices without prices if it is done in a law list or directory which is certified by the American Bar Association. EC 2–8. These lists and directories are not confidential. They are available for public use, housed in public libraries, etc. It is not immediately appar-

ent to the court how listing fields of law to which practice is limited is not deceptive to the public in that form, but is when done in the yellow pages.

Nevertheless, the court must answer the question of whether the type of advertisement prohibited is misleading or deceptive in order to determine the protection to which it is entitled under the first amendment.

When a lawyer is licensed to practice in the State of Tennessee, he or she is deemed to have mastered the basic skills of the legal profession which will permit the attorney to become sufficiently competent in any area of the law to adequately represent a client therein. It in no way implies past-demonstrated competence in all areas of the law.[16] The lawyer, then, begins as a generalist. Presumably, a lawyer who advertised himself thusly would not be implying any specialization or expertise in a given field of law. If every field of law were advertised,[17] that would be a truthful, verifiable statement of fact which could not be prohibited under *Bates*.[18] The alleged deception appears to come about as one begins to delimit one's practice. Where the line of deception is crossed is difficult to delineate. The court is unwilling to say that one who advertised that only civil law was practiced is implying any specialty—an incredibly vast area of law is covered by the term "civil." But, on the other hand, if one advertises "Aircraft Crash Litigation," it would probably appear to the layman that that person had some expertise in that complex field and was therefore a specialist. This is problematical because the Supreme Court has reserved judgment on whether, or, to what extent, a lawyer may advertise concerning the quality of legal services of-

---

**16.** An analogous profession would appear to be veterinary medicine. It is not possible in four years of medical school to learn the metabolisms of every species of animal on earth or the contraindications of medicines within those metabolisms. As in law, answers to specialized questions may be provided by research. However, the veterinarian is licensed to treat every variety of affliction, whether through medicine or surgery, in the animal kingdom. The court wonders, by virtue of this case, whether a veterinarian who limits his practice to small animals and equines is holding out as a specialist in dogs and horses if he or she so advertises.

**17.** This is not to say that that is possible.

**18.** Of course, other sections of the Code define the required proficiency for actually accepting a case.

fered. 433 U.S. at 366, 97 S.Ct. at 2700, 53 L.Ed.2d at 825.

What is not apparent from the foregoing is why any deception is cured by adding a price quotation. Indeed, such a requirement borders on the irrational. To say that one who advertised "Aircraft Crash Litigation—Fee: 25% of Recovery" or "Antitrust —$100 per Hour" is not implying a special expertise is falacious.

Although unarticulated, it may be that the underlying rationale for this argument is that only simple, routine legal services are capable of having a predetermined price attached thereto. But the foregoing indicates the error of this premise. The test should be the degree of standardization of the service involved and not the mere quotation of a price along with the service.

In short, the deception claimed by the defendants is not cured by the regulation. And the question of whether deception exists still remains unanswered. However, under the standards of the FTC, reviewed *supra,* the court is willing to concede that a lawyer's advertisement which listed only a few legal services or fields of practice would imply expertise therein to all or a part of the lay public and would thereby imply a higher quality of service offered.

 Therefore, it is concluded that the content of the advertisements in question may be regulated. But reasonable regulation and total prohibition are two different things. To the extent that the regulation sweeps too broadly it is an unconstitutional restraint of free speech. The state is required to us the least restrictive means [19] in the regulation of commercial speech.[20] A

19. Although not articulated in *Bates*, this standard is clearly implied and it was the formula used in *Virginia Pharmacy* where the Court noted that the state had an alternative to its "highly paternalistic approach" which banned the advertisements in question. 425 U.S. at 770, 96 S.Ct. at 1829–1830, 48 L.Ed.2d at 363.

20. In *Virginia Pharmacy*, the Court observed that, because the restriction under attack was challenged under the first rather than the fourteenth amendment, it called for a "close inspection" of the justifications propounded by the state. There is little doubt that the Court was calling forth a least restrictive means analysis. In noting less restrictive alternatives, the Court stated:

> [T]he choice among these alternative approaches is not ours to make or the Virginia General Assembly's. It is precisely this kind of choice, between the dangers of suppressing information and the dangers of its misuse if it is freely available, that the First Amendment makes for us. Virginia is free to require whatever professional standard it wishes of its pharmacists; it may subsidize them or protect them from competition in other ways. But it may not do so by keeping the public in ignorance of the entirely lawful [and truthful] terms that competing pharmacists are offering.

425 U.S. at 770, 96 S.Ct. at 1829, 48 L.Ed.2d at 363 (citations omitted).

In reviewing that passage, one commentator wrote that this

> sounds very much like the absolutist statement which is the holding of *Bates*: A state may not "prevent the publication in a newspaper of . . . [a] truthful advertisement . . . ." But in neither opinion did this language mean that the states were prohibited from imposing *any* content restrictions on advertising. In each case, the Court said that states are free to regulate the contents of advertising by prohibiting the publication of false, deceptive, or misleading information. This tends to imply that the Court was applying, sub silentio, a "least restrictive alternative" test on the issue of content restrictions. The Court was recognizing that (1) there is a legitimate state interest in protecting consumers from being abused by sellers of goods and services, and (2) this obvious state interest might prompt a state to attempt to regulate advertising with this consumer protection objective in mind. Having recognized this legitimate state interest, however, the Court did not open the door for the states to advance that interest in any way they might deem to be rational. Instead, the court observed that this state interest can be adequately protected simply by prohibiting false, deceptive, and misleading advertising. The implication—and it is only an implication—is that this is the *only* way the states may advance this interest because it is the least restrictive way the states can achieve their legitimate consumer protection interest while at the same time securing the zone of interests protected by the first amendment. This is the only way to reconcile (1) the Court's absolutist statements against any restraints on truthful advertising, (2) the Court's language tolerating some consumer protection restrictions, and (3) the Court's "close [and critical] inspection" of the consumer protection arguments raised by the states in both *Virginia Pharmacy* and *Bates*.

Hellman, *supra,* n. 10 at 549 (citations omitted).

blanket prohibition of any advertisement of a routine legal service or a field of law without an accompanying fee therefor is unconstitutional. There are many ways in which any deception in a facially truthful advertisement may be cured short of total prohibition. *Bates* appears to approve of either supplementation or warnings or disclaimers as a method of curing an advertisement which might otherwise have the potential to mislead. 433 U.S. at 384, 97 S.Ct. at 2709, 53 L.Ed.2d at 836. *See generally*, Note, *First Amendment Limitations*, *supra*, n. 14. Certainly a lawyer's advertisement which stated that his practice was limited to domestic relations but which was accompanied by a warning or disclaimer that no particular expertise above that of the general legal community was asserted or implied would not mislead a consumer as to the quality of the legal services being offered. That is the kind of truthful advertising, susceptible of precise measurement or verification, which *Bates* and the first amendment protect against prohibition.[21]

Listing the area of one's practice or the availability of routine legal services is information which is valuable to the consumer. It is a practical reality of the legal profession that not all lawyers practice all law. The large metropolitan firms tend to represent major corporations and wealthy individuals. Comment, *Advertising, Solicitation and the Profession's Duty to Make Legal Counsel Available*, 81 Yale L.J. 1181, 1203 (1972) *citing* J. Carlin, *Lawyers on Their Own: A Study of Individual Practitioners in Chicago* (1962). These firms do little, if any, work which is of a type sought after by the general public such as divorce, simple wills, real estate closings, and the like. Hence, the firms which are perhaps best known are of the least usefulness to the individual legal consumer. It is the small firms and solo practitioners, generally, who supply both the services sought by

the general public and those which lend themselves to advertising with or without a fee structure: Property conveyances, most aspects of mortgage lending, administration of decedent's estates, small debt collection, preparation of income tax returns for salaried persons, real estate tax contests, and complaints about government–administered programs such as social security and welfare. *Id.* at 1205. Without doubt, an advertisement in a newspaper or telephone directory listing those services would be of assistance in enabling a consumer to locate a lawyer or firm who handles the routine legal services required of and by the public at large. *Bates* prevents the state from cutting off the free flow of this information. The first paragraph of the Code of Professional Responsibility strongly reinforces the foregoing:

> The continued existence of a free and democratic society depends upon the recognition of the concept that justice is based upon a rule of law grounded in respect for the dignity of the individual and his capacity through reason for enlightened self–government. Law so grounded makes justice possible, for only through law does the dignity of the individual attain respect and protection. Without it, individual rights become subject to unrestrained power, respect for law is destroyed, and rational self–government is impossible.

The first amendment of the United States Constitution has set its mandate, the Supreme Court has interpreted it, and, against this, the restrictions of the State of Tennessee cannot stand.

*Attorney Fees*

▮ Attorney fees are awarded, in the discretion of the court,[22] to successful litigants in suits for the preservation of constitutional rights. The policy underlying this provision is to encourage citizens to sue for

---

See also, *Wall & Ochs, Inc. v. Hicks*, 469 F.Supp. 873 (E.D.N.C.1979), in which the court observed: "The state may, of course, restrain false, deceptive or misleading advertising as long as it refrains from unduly burdening commercial speech." *Id.* at 880.

**21.** See the discussion in *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100, 116–21 (1979) (Blackmun, J., dissenting).

**22.** 42 U.S.C. § 1988.

civil rights violations without being deterred by the cost of litigation.

In the case at bar, the action was brought by a licensed attorney pro se to secure personal and professional rights. Minimal expenses and time lost from other cases were incurred. The court is not of the opinion that attorneys will be deterred from litigating questions of this nature for themselves by the cost of litigation.

In addition, there is no indication that the State of Tennessee acted without good faith in every particular. The circumstances of this case are such that an award of attorney fees is not justified, and the same is hereby denied. The court adopts the analysis of *Consumers Union of United States v. American Bar Association*, 470 F.Supp. 1055, 1058–63 (E.D.Va.1979) on this point.

An appropriate order will be entered.