NO. 14968

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN RE MOUNTAIN BELL DIRECTORY ADVERTISING

---

ORIGINAL PROCEEDING:

Appearances:

For Mountain Bell:

George T. Bennett (argued), Helena, Montana

Keith Galitz (argued), Denver, Colorado

Others:

Paul T. Keller (argued), Helena, Montana, for the Ethics Committee of the State Bar of Montana

Perry J. Moore (argued), Bozeman, Montana, pro se

L. Morris Ormseth, Great Falls, Montana, for the State Bar of Montana

William P. Fitzgerald, Billings, Montana, pro se

---

Submitted: September 20, 1979

Decided: OCT 2 1979

Filed: OCT 2 1979

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Mountain States Telephone and Telegraph Company, a Colorado corporation, operates in seven western states and El Paso, Texas. In Montana, as elsewhere, it is a public utility company operating an extensive telephone service under the trade name of Mountain Bell.

It publishes several telephone directories in Montana which include the well-advertised "yellow pages". In the lawyers' section of the yellow pages, it has in the past listed gratis the name, address and telephone numbers of lawyers and law firms if they are also telephone subscribers listed in the white pages of the directories.

In the next publication of the directories for Billings, Bozeman, Kalispell, Great Falls, Helena, Butte and Missoula, Mountain Bell proposes to publish a Lawyers Guide following the alphabetical listing of lawyers in the yellow pages. Thirty-three categories of practice under the Lawyers Guide and cross-references thereto are proposed as follows:

```
Accidents - Personal Injury/Property Damage
Administrative & Governmental
Admiralty
Agricultural - Ranch/Farm/Livestock
Antitrust
Aviation
Banking
Bankruptcy
Collections
Consumer
Corporation, Partnership & Business
Criminal
Divorce-Family
Environmental
Estate Planning, Wills & Trusts
General Practice
Immigration & Naturalization
Insurance
International
Juvenile
Labor
Landlord & Tenant
```

Mining
Oil & Gas
Patent
Probate & Estate Administration
Real Estate
Securities
Taxation
Trademark & Copyright
Trials & Appeals
Water
Workmen's Compensation

CROSS-REFERENCE LIST - LAWYERS

Children
    See Juvenile

Commercial Law and Contracts
    See Corporation, etc.

Debt Collection
    See Collections

Wills & Trusts
    See Estate Planning, Wills & Trusts

Social Security
    See Administrative & Governmental

A caveat would be printed on each page of the proposed Lawyers Guide as follows:

"The fields of law named in the listing
subheadings indicate that the lawyer or
law firm will accept employment for matters
coming within the fields of law listed in the
subheadings, but do not indicate that the
lawyer or law firm limits or primarily limits
his, her or its practice to or specializes
in the fields of law used in the subheadings,
unless otherwise indicated."

This Supreme Court by order of May 1, 1973 (see, 160 Mont. pp. xxiii-lv, incl.), adopted with minor amendments the Canons of Professional Ethics proposed by the American Bar Association to govern the activities of lawyers in Montana. DR 2-102(A)(5) of those Canons provides:

"DR 2-102 Professional Notices, Letterheads,
Offices and Law Lists

"(A) A lawyer or law firm shall not use
professional cards, professional announcement
cards, office signs, letterheads, telephone
directory listings, law lists, legal directory
listings, or similar professional notices or
devices, except that the following may be used

-3-

if they are in dignified form:

". . .

"(5)  A listing of the office of a lawyer
or law firm in the alphabetical and classified
sections of the telephone directory or directories
for the geographical area or areas in which the
lawyer resides or maintains offices or in which
a significant part of his clientele resides and
in the city directory of the city in which his
or the firm's office is located, but the listings
may give only the name of the lawyer or law firm,
the fact he is a lawyer, addresses, and telephone
numbers.  A law firm may have a listing in the
firm name separate from that of its members and
associates.  The listing in the classified
section shall not be under a heading or classi-
fication other than 'Attorneys' or 'Lawyers,'
except that additional headings or classifications
descriptive of the type of practice referred to in
DR 2-105 are permitted."

Canon DR 2-105, referred to in the above Canon, as

now promulgated, provides that a lawyer shall not hold

himself out publicly as a specialist, or as limiting his

practice, except that lawyers engaged in patent, trademark

or admiralty practice may use such terms on his letterhead

and office sign; a lawyer's name may be listed in lawyer

referral service offices according to fields of law in

which he will accept referrals; and a lawyer may distribute

to other lawyers or publish in legal periodicals of his

availability in a particular branch of practice, not

including any representation of special competence or

experience.

From the foregoing, it is obvious that the proposal

of Mountain Bell to categorize branches of practice in its

Lawyers Guide and to accept listings of lawyers under any

or all such categories in its yellow pages runs counter to

the Canons governing lawyers in Montana as they are now in

effect.  This Court, however, has been considering on its

own and accepting suggestions from the bar for amendments

to the Canons that will conform to the spirit and purpose of

-4-

the decision of the United States Supreme Court in Bates
v. State Bar of Arizona (1977), 433 U.S. 350, 97 S.Ct. 2691,
53 L.Ed.2d 810.

We have not reached a final conclusion as to the
precise form of the amendments to be adopted. The subject
is quite complex. However, in advance of the adoption of
such amendments, it is propitious that this Court indicate
its opinion with respect to Mountain Bell's proposal for the
governance of the bar. To that end we invited Mountain Bell
and the organized bar, particularly its Ethics Committee,
to attend a hearing before us so that the proposal could
be identified and the response of the bar determined. We
have had the benefit of such hearing and the briefs and
documents supplied us by the participants.

Mountain Bell submits in support of its proposal that
(1) the Bates case requires it to accept advertising for
lawyers; (2) that a list of lawyers who would accept employ-
ment under the proposed categories would be a public service
and convenience to consumers, and save time and trouble for
lawyers who decline certain categories of law business; (3)
that it would charge for each individual listing under each
category a sum depending upon the circulation size of the
directory (e.g. $1.45 per month for each category listing
in Great Falls, or $3.65 per month for each bold face listing;
$1.25 per month in Helena, or $3.00 per month for each
bold face); (4) that it would not publish a Lawyers Guide in
smaller communities, where the lists of lawyers would be
short, the lawyers are general practitioners, and usually
well-known in their communities; (5) that such guides are
now published in other states and will be published in
Colorado this year; (6) that any prohibitions upon telephone

-5-

directory listings is illegal under Princeton Community Phone Book, Inc. v. Frank L. Bate, et al., individually and as members of the Advisory Committee on Professional Ethics of the New Jersey Supreme Court (U.S.C.A.3d 1978), 582 F.2d 706; and, (7) that lawyers may advertise and are now advertising in other media, notably newspapers.

The State Bar of Montana has responded that (1) its Board of Trustees are opposed 12-2 to such yellow page listings; (2) that the proposed advertising is inherently misleading; (3) that a lawyer so listing his specialties should accept professional responsibility for claiming specialized expertise; (4) there is no need for such specialty advertising but lawyers will be forced to use them by reason of competition.

The Ethics Committee of the State Bar of Montana is opposed because (1) lawyers would feel the need to utilize as many as twenty such listings, with the accompanying expense; (2) the majority of state lawyers oppose the proposal; (3) the allowance of block ads or display ads in the yellow pages would satisfy Bates; and, (4) such listings would be misleading to the public in spite of the caveat, because the public would assume that the lawyers listed under the categories were specialists in the respective categories; (5) the proposal would work against lawyers who feel the dignity of the profession requires that they publish only their names, firms, and office addresses and telephone numbers in the yellow pages.

William J. Fitzgerald of Billings filed a written memorandum to oppose Mountain Bell's proposal. He and his firm have utilized block advertisements in the yellow pages since the Bates case. He reported (1) his conversations with lawyers in Billings, Montana's largest city, and the

-6-

smaller towns surrounding it, and that such lawyers oppose the Mountain Bell proposal; (2) that the proposal is incompatible with the profession of law as it is practiced in eastern Montana, where most attorneys have a general practice; (3) that an attorney would have to list himself or herself under an extended list of headings, the expense of which would be advantageous to large firms and disadvantageous to small or one-person firms; (4) that Montana has no standards adopted as to what should be required for an attorney to hold himself out to the public that he is a specialist; and, (5) that the consuming public would regard lawyer listings as they do physician listings, implying the legal profession is similar to the medical profession which has well defined areas of specialization, irrespective of the caveat.

Perry J. Moore of Bozeman and Harlowton appeared in person and filed a memorandum opposing Mountain Bell. He contends that the thrust of the Bates decision is that lawyers are entitled to advertise as long as the advertisement is not false, fraudulent or misleading. He states that nearly all of the lawyers in his area (including Billings) are general practitioners; that each general practitioner would feel forced to list under many of the categories; that the number of listings under each category would confuse, rather than aid, a prospective client searching for a lawyer under a category; that the proposal will not aid the consumer to make an informed decision; and that the implication of specialized ability through such categories would be misleading to the consuming public.

It is our opinion that lawyers who listed themselves in the yellow pages under the branches of practice proposed by Mountain Bell would indeed be holding themselves out to the public as having special expertise in such branches;

that the public would be misled thereby into believing that standards of specialization exist in the legal profession in Montana as they do in other professions; that the proposed caveat would not be advantageous to the consumer and advantageous only to the lawyers and Mountain Bell; and that there is little or no need in Montana presently for the kind of category listing proposed.

First and foremost, it is necessary to understand the implications of the Bates decision. In Bates, the United States Supreme Court is saying that advertising by lawyers is protected commercial speech under the First Amendment; that lawyer advertising is necessary to aid the consuming public to "facilitate the process of intelligent selection of lawyers". 433 U.S. at p. 377; 97 S.Ct. at p. 2705. But in no way should Bates be construed as requiring under the First Amendment that false, fraudulent and misleading advertising is protected, or as suspending such laws against deceptive practices in business as are embodied in section 45-6-317(b), MCA. Again, see Bates, 433 U.S. at 383, 97 S.Ct. at 2708.

To be sure, we are quick to say, there are many lawyers in Montana who have achieved a high level of competence in certain branches and perhaps several branches, of the practice of law. Nothing we say here would prevent any such lawyer or law firm from publishing in block or classified ads in newspapers, yellow pages, or other printed media, suitable advertisements advising the public of the areas of their practice, fee schedules, and other truthful information useful to prospective clients. But under the proposal of Mountain Bell, the highly competent lawyers in any branch of legal practice would be lumped without distinction with lawyers of perhaps lesser competence in the same category.

-8-

No distinguishing factors in the proposed listings would be of any aid to shopping clients in making an intelligent selection. Instead the impression is created that each of the lawyers is of equal ability in the category noted and that each is a specialist in that field. Thus, the proposal is misleading and frustrates rather than implements the spirit and purpose of Bates.

On this point, Mountain Bell contends that it is not asserting specialization; that it is merely stating in what areas lawyers will accept employment, and that its caveat advises the would-be client that specialization is not indicated. However, the public statements of Mountain Bell and its solicitation of listing from lawyers belie this contention. In announcing the proposed Lawyers Guide, the Mountain Bell spokesman said, as reported in the Great Falls Tribune on September 16, 1979:

> "Russ Cravens, spokesman for Mountain Bell's state headquarters here, said Thursday the phone company is proposing to list lawyers in the Yellow Pages according to specialty of practice.
>
> "This listing would be in addition to the regular alphabetical listing now found in the Yellow Pages.
>
> "Cravens likened the new listings to those now offered to physicians, whose speciality is included under their names in the Yellow Pages.
>
> "He said that while many lawyers handle a wide variety of cases, some specialize in such things as bankruptcies, divorces, antitrust actions, estates, wills and trust, corporate law, taxes, etc.
>
> "'The idea is to help improve the usefulness of the Yellow Pages and to help people handle the kind of problem they may have,' Cravens said."

Moreover, in soliciting listings from lawyers in the upcoming Billings telephone directory, by letter, Mountain Bell urged lawyers to be listed under their "specialties." The public statements and communications of Mountain Bell

-9-

indicate the reality of their proposal: the public would assume some sort of specialization is authored, approved and sanctioned among Montana lawyers.

Mountain Bell also asserts that a client is protected by malpractice procedures if a lawyer should accept employment under a listing for which he is incompetent or inexperienced. We prefer the ounce of prevention to the pound of cure.

Since we find that it is implied in Mountain Bell's proposal that the listings assure specialized expertise in each field, we are led inexorably to the conclusion that such implication is misleading as a general matter. In Montana certainly, we have not adopted standards of competence relating to specialized fields of law practice. In that regard we are not to be compared to the profession of medicine, which, by means of board certification, and staff rules in hospitals, can hold out to consumers areas of competence for physicians and surgeons. While many lawyers under each category would most probably be competent, some might not be. Nothing would inform the unsuspecting seeker of legal aid which is which. The possibility of harm would be ameliorated if Mountain Bell would take it upon itself, in the manner of Good Housekeeping, to assure the quality of its listings. Its solicitation for listings indicates quite the opposite: it will accept any lawyer's name under any category. It relies on the caveat to avoid responsibility for any lack of ability of the lawyer. There is no assurance of the truthful advertisement which the First Amendment protects under Bates, 433 U.S. at 384; 97 S.Ct. at 2709.

Thus the caveat is a protection to Mountain Bell and to the lawyer who, having accepted employment under a particular listing, can point to the language of the caveat

-10-

as excluding any representation of expertise in the field. It is not advantageous to the client, who in truth, is never promised a rose garden, though specialized fields are listed in the yellow pages.

The last element on which we base our decision is that there is little or no need for such listings in Montana. We are a rural state with a total population of approximately 800,000 persons spread out over the fourth largest state in the union. Our largest city has approximately 150 lawyers now listed in the yellow pages. By and large our bar in the great majority is composed of general practitioners. Specialization has been developing, but mostly in the fields of taxation, referring especially to income and estate taxes. While some lawyers acquire a reputation for special ability in one or more fields of practice, they do not necessarily limit their practice to such fields. In this situation, a lawyer practicing in any of our cities and towns would feel compelled to list under a dozen or more of the categories proposed. It would be a matter of keeping up with the competition, and to reflect the true nature of his or her practice spreading across many fields.

Additionally, the telephone directories for the larger cities also contain the directories for smaller towns around the larger cities. For example the Billings telephone directory also contains the telephone directories for twenty of the smaller towns surrounding it. A lawyer practicing in a smaller town listed in such a directory, along with lawyers from the larger city, would find himself unlisted as to specialties in the yellow pages while his colleagues in the larger city would have such specialty listings. It would be a competitive disadvantage for example, for a lawyer in Harlowton,

Montana with no listed specialty, to appear in the same directory with the Billings lawyers, who with no greater assurance of competence could nevertheless hold out to the consumers in Harlowton, only 90 miles away, that they had special abilities available in Billings. There is no need for such yellow page listing anomalies since other advertising is permitted.

We have examined the case of Princeton Community Phone Book, Inc. v. Frank L. Bate, et al, individually and as members of the Advisory Committee on/Ethics of the New Jersey Supreme Court (U.S.C.A.3d 1978), 582 F.2d 706. It is impressive, but we are inclined to liken the situation here to Ohralik v. Ohio State Bar Association (1978), 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444, where it is held that a state may constitutionally discipline a lawyer for soliciting clients, for pecuniary gain, under circumstances likely to pose dangers to the public that the state has a right to prevent. 436 U.S. at 449, 98 S.Ct. at 1915. There is a significant potential in the Mountain Bell proposal for misrepresentation and overreaching by lawyers and resulting harm to the public. We would hope that Mountain Bell, in a spirit of cooperation, would withdraw its proposal in Montana.

Nothing in this opinion affects the listings already permitted by the existing canons, and again, nothing herein stated prevents any lawyer or law firm from individually advertising by truthful and informative means in the yellow pages or other printed media. We expect to handle the matter of advertising in electronic media when we finally amend our Canons of Ethics.

John E. Sheehy
Justice

-12-

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_
Justices