Frank A. CARTER, Jr., Chief
Disciplinary Counsel,

v.

LOVETT AND LINDER, LTD.

No. 81–113–M.P.

Supreme Court of Rhode Island.

Feb. 27, 1981.

Frank A. Carter, Jr., pro se.

Carroll, Kelly & Murphy, Joseph A. Kelly, Providence, for respondent.

OPINION

KELLEHER, Justice.

This is a controversy in which the respondent law firm, Lovett and Linder, Ltd. (the law firm), takes issue with a report filed by the court's Disciplinary Board (the board).

The dispute centers on an advertisement that appeared on the inside back cover of a directory published in August 1978 by the New England Telephone Company and distributed within the town of Narragansett and its surrounding area. The board in its report to us found that the law firm had committed "technical violations" of the provisions of our Provisional Order No. 11. The board also recommended that we dismiss the petition but do so with a direction to the law firm that it discontinue its use of the advertisement at the earliest possible opportunity. On April 30, 1980, we entered an order dismissing the petition for disciplinary action and directing the law firm to discontinue the advertisement at the earliest possible moment. The law firm, through its counsel, sought a reconsideration of the order, briefs were filed, and on January 29, 1981, counsel for both the board and the law firm appeared before us in chambers.

Provisional Order No. 11 was originally promulgated by this court on January 12, 1978, and subsequently modified in October 1979. We modified the order so as to permit advertising by way of the electronic media. The order was promulgated to meet the requirements of *Bates and O'Steen v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). *Bates* ruled that an attorney had a First Amendment right to advertise routine legal services setting forth the fees that were to be charged for such services. *Id.* at 367–68, 382, 97 S.Ct. at 2701, 2708, 53 L.Ed.2d at 826, 835. Our order specified that the advertisements would be placed only in certain specified media, including the "yellow pages of the telephone directories." The order stipulated that attorneys could make no claim of expertise or specialization in any particular field or area of the law.

■ The law firm, in claiming that it complied with the yellow-pages directive of our order, relied on testimony of the yellow-pages sales manager for the New England Telephone Company, who stated that the inside back cover of the directory was "part of the yellow pages as far as we're con-cerned." That the law firm acted upon this information is not disputed. The board contends that "yellow pages means yellow pages" and that the directory's inside back cover is not part of the yellow pages. At the time the order was promulgated, it was intended that those fingers that might be walking their way through the yellow pages looking for a lawyer would never come close to either the directory's front or its back covers. However, having in mind the manager's testimony, we feel that the point must be conceded that the court could have expressed itself in a more explicit manner.

■ Hereafter, any advertisement placed in the telephone directory by an attorney shall be in those pages that are colored yellow and within that section of the yellow pages which carries the designation "Lawyers." This directive is consistent with the rationale of *Bates*, where the Court observed that the flow of information which advertising provides can be beneficial both to consumers and to attorneys. *Bates and O'Steen v. State Bar of Arizona*, 433 U.S. at 375–76, 97 S.Ct. at 2704–05, 53 L.Ed.2d at 830. We believe that the Supreme Court, in recognizing an attorney's First Amendment right to advertise, never intended to sanction a competitive struggle over which attorney or law firm would receive the advertising industry's accolade for having the biggest, best, and, in the case at bar, most colorful ad in the category reserved for the legal profession.

In the light of the impreciseness of our Provisional Order, the petition for disciplinary action, insofar as it relates to the advertising issue, is dismissed. However, the law firm is directed to take immediate steps to ensure that any advertisements that will appear in telephone directories now being readied for distribution will be found within that portion of the yellow pages which carries the designation "Lawyers."

■ In its advertisement, the law firm listed approximately thirteen areas of the law, including "Workmen's Compensation," "Federal Employee Claims," "Social Security Claims," "Automobile Accidents," "Wills

—Real Estate Agreements," "Music & Re- cording Contracts," and "Bankruptcy." The board found that by taking this tack, the law firm was making a claim of exper- tise or specialization in those areas listed in the ad. The board noted that although the advertisement does not explicitly claim ex- pertise, potential clients could reasonably infer that the law firm had expertise in those areas of the law. In our opinion, this concern about client perception has merit.

Our Provisional Order not only bars the claim of expertise in any particular field of the law but specifically permits a lawyer or law firm to refer to specific areas of the law in but two instances. The Provisional Order authorizes an advertisement in which the lawyer or law firm may specify the type of work it "does *not* wish to undertake" and allows a lawyer or law firm to advertise the fees that they intend to charge for certain "routine services" which are expressly set forth in the order. Among the services delineated are "Uncontested divorces," "Simple adoptions," "Uncontested personal bankruptcies," "Change of name," "Simple residential deeds," "Powers of attorney," "Individual income tax returns," "Bills of sale," and "Collections." The charge for an initial conference with a client may also be advertised.

We affirm the finding of the board in regard to the specialization issue, but, hav- ing in mind the novelty of lawyer advertis- ing in 1978, we will impose no sanction. However, the law firm shall immediately discontinue its former practice and delete from all advertisements presently being processed, and omit from all future adver- tisements, any mention of areas of the law unless, of course, it wishes to advertise the routine services listed in our Provisional Order and the fees it will charge for such services.

█ The law firm had contended that the Provisional Order is unconstitutionally vague. However, we believe that the rule's uncertainty is to be found in our original reference to the yellow pages of the tele- phone directory, and this uncertainty has been resolved by our specifying in this opin- ion that any ad must be placed within those yellow pages which carry the designation "Lawyers."

We take this opportunity to admonish all attorneys to reexamine the provisions of Provisional Order No. 11, particularly those that bar the use of photographs, design work, logos, biographical data, or the fact that a lawyer referred to in the advertise- ment may serve as a part-time judge. We shall repeat here the admonition relative to an attorney's duty to comply with the dic- tates of the Code of Professional Responsi- bility found in *Judge v. Janicki*, 118 R.I. 378, 386, 374 A.2d 547, 551 (1977): "A word to the wise ought to suffice."