**LOVETT AND LINDER, LTD., Ronald J. Resmini, Ltd. and Stone, Clifton and Clifton**

v.

**Frank A. CARTER, Jr., et al.**

Civ. A. No. 81–0118.

United States District Court, D. Rhode Island.

Sept. 8, 1981.

904

Milton Stanzler, Lynette Labinger, Providence, R. I., for Plaintiffs.

Stephen Lichatin, III, Asst. Atty. Gen., Providence, R. I., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

This action was heard on the merits of the Plaintiffs' prayers for declarative and injunctive relief.

The action has been certified as a class action.[1] The class consists of "all lawyers and law firms within the State of Rhode Island, who are presently publishing, who have contracted to publish and/or in the future intend to publish advertisements which list areas of law in which the lawyers and/or law firms practice."

There are two questions in this action which relate to the location or placement of notices by lawyers in the classified section of the telephone directory and the content of such notices. Plaintiffs Lovett and Linder, Ltd., a law firm practicing law in the State of Rhode Island, contracted with the New England Telephone & Telegraph Company in 1978 and 1979 to purchase the entire space on the inside back cover of a

---

1. The parties agreed that this action should be certified as a class action and do not question this Court's jurisdiction.

number of telephone directories circulated in the State of Rhode Island. The publication which was in three colors, red, white and blue, stated the following:

LOVETT and LINDER, LTD.

Attorneys and Counsellors at Law

RAUL L. LOVETT

STEPHEN G. LINDER

WARREN R. WOLF
PAUL V. GALLOGLY
ARAM R. SCHEFRIN
MICHAEL S. SCHWARTZ
LAUREN E. JONES
FREDERICK G. CASS
VINCENT A. DiMONTE
JOYCE A. FARAONE
BRUCE I. SONDLER

LEO PATRICK McGOWAN
Special Counsel

\*\*\*

| | |
|---|---|
| WORKER'S COMPENSATION | AUTOMOBILE ACCIDENTS |
| ON THE JOB INJURIES | PERSONAL INJURY |
| FEDERAL EMPLOYEE CLAIMS | PRODUCT LIABILITY |
| SOCIAL SECURITY CLAIMS | PROBATE COURT |
| FAMILY COURT | WILLS • REAL ESTATE AGREEMENTS |
|   DIVORCE | MUSIC & RECORDING CONTRACTS |
|   SUPPORT | BANKRUPTCY |
|   CUSTODY | CRIMINAL |
|   PROPERTY SETTLEMENTS | |

NO CHARGES MADE FOR FIRST CONFERENCE ON ANY MATTER

\*\*\*

TWO THOMAS STREET

PROVIDENCE, RHODE ISLAND

TELEPHONE 274–0700

Twenty-Four Hour Answering Service

SE HABLA ESPANOL      \*    NOS FALAMOS PORTUGUES

On April 30, 1980, the Rhode Island Supreme Court directed Lovett and Linder, Ltd. to discontinue "the advertisement at the earliest possible moment."

In the 1981 telephone directory, Plaintiff firm published a similar notice consisting of a half page under the heading of "lawyers" within the directory and which is the same in form as its earlier notice except that at the end of the listing of areas of law it added "We make no claim of expertise or specialization in these matters." This notice is in black and red type upon yellow paper.

On February 27, 1981, the Rhode Island Supreme Court filed its opinion in *Carter v. Lovett and Linder, Ltd.*, R.I., 425 A.2d 1244, in which it held that Provisional Order No. 11 of the Court was violated by Lovett and Linder, Ltd.'s three color ad on the back inside page of the 1980 Narragansett, Rhode Island directory in that it was misplaced and made claims of expertise.

The Rhode Island Supreme Court in *Carter v. Lovett and Linder, Ltd.*, stated the following concerning placement of lawyer advertising:

Provisional Order No. 11 was originally promulgated by this court on January 12, 1978, and subsequently modified in October, 1979. We modified the order so as to permit advertising by way of the electronic media. The order was promulgated to meet the requirements of *Bates and O'Steen v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

*Bates* ruled that an attorney had a First Amendment right to advertise routine legal services setting forth the fees that were to be charged for such services. *Id.* at 367–68, 382, 97 S.Ct. at 2701, 2708, 53 L.Ed.2d at 826, 835. Our order specified that the advertisements would be placed only in certain specified media, including the "yellow pages of the telephone directories." The order stipulated that attorneys could make no claim of expertise or specialization in any particular field or area of the law.

\*     \*     \*     \*     \*     \*

Hereafter, any advertisement placed in the telephone directory by an attorney shall be in those pages that are colored yellow and within that section of the yellow pages which carries the designation "Lawyers." This directive is consistent with the rationale of *Bates*, where the Court observed that the flow of information which advertising provides can be beneficial both to consumers and to attorneys. *Bates and O'Steen v. State Bar of Arizona*, 433 U.S. at 375–76, 97 S.Ct. at 2704–05, 53 L.Ed.2d at 830. We believe that the Supreme Court, in recognizing an attorney's First Amendment right to advertise, never intended to sanction a competitive struggle over which attorney or law firm would receive the advertising industry's accolade for having the biggest, best, and, in the case at bar, most colorful ad in the category reserved for the legal profession.

In the light of the impreciseness of our Provisional Order, the petition for disciplinary action, insofar as it relates to the advertising issue, is dismissed. However, the law firm is directed to take immediate steps to ensure that any advertisements that will appear in telephone directories now being readied for distribution will be found within that portion of the yellow pages which carries the designation "Lawyers."

*Id.* 425 A.2d at 1245.

Concerning the effect of the schedule of areas of law practice referred to in the advertisement, the Rhode Island Supreme Court stated:

The board (the Court's Disciplinary Board) found that by taking this tack, the law firm was making a claim of expertise or specialization in those areas listed in the ad. The board noted that although the advertisement does not explicitly claim expertise, potential clients could reasonably infer that the law firm had expertise in those areas of the law. In our opinion, this concern about client perception has merit.

Our Provisional Order not only bars the claim of expertise in any particular field of the law but specifically permits a lawyer or law firm to refer to specific areas of the law in but two instances. The Provisional Order authorizes an advertisement in which the lawyer or law firm may specify the type of work it "does *not* wish to undertake" and allows a lawyer or law firm to advertise the fees that they intend to charge for certain "routine services" which are expressly set forth in the order.

*Id.* 425 A.2d at 1246.

Raul Lovett, Esquire, testified that he was the sole stockholder of Lovett and Linder, Ltd. He began the publications in the telephone directories in 1978. With respect to the publication which appeared on the back cover of the 1980 directories, the firm was given a choice of three proofs, one of which included the possibility of an ad with a yellow background and black print. This was rejected in favor of a full page ad using the colors red, white and blue. The ad actually had a white background with red and blue type. He testified that the ad was extremely effective and that his firm had grown substantially following publication of the ad to a point where there are presently 50 people employed, including 17 attorneys. In 1980 the firm's advertising cost for the publications in the telephone directory was approximately $40,000 and Mr. Lovett testified that the ads had paid for themselves. In explanation of the listings of certain areas of the law, he testified that those areas were areas in which the firm had an interest in practicing and, be-

cause of the listing, persons who had legal problems in those fields could contact the office. He also testified that the effect of the ad was to avoid having prospective clients calling or contacting the office concerning problems in areas other than those in which the firm had expressed an interest.

Walter R. Stone, Esquire, testified that in 1981 his firm, Stone, Clifton & Clifton, published a one-eighth page notice in the yellow pages "Lawyers" section. The notice was in two colors, black and red, on yellow paper and listed various categories of law practice under the headings of civil law, litigation, administrative agencies, and criminal matters. He was satisfied that the ad paid for itself although it was of mixed effectiveness. He likewise testified that listing of areas was to aid the consumer by indicating the general areas of interest of the firm. He testified that he did not include civil rights in the categories because of the volume of telephone calls which such listing might prompt although he does accept civil rights litigation. He also testified that with respect to his own private practice which he had carried on for about five years following employment by the Attorney General of the State of Rhode Island and in the Public Defender's Office, the purpose of the notice was to inform the public that his practice was not limited to criminal law.

Although not introduced in evidence, the Court will judicially notice the June, 1981, Yellow Pages of the Providence Telephone Directory. Fed.R.Evid. 201. The practice of listing areas of the law such as Family Law, Personal Injury, Products Liability, Malpractice, Workman's Compensation Law, Labor Law, Employment Discrimination, Civil Rights, Civil and Criminal Trials, Wills and Probate, Corporate and Tax law, to mention a few, has become rather widespread. Indeed, one attorney states in his schedule "7 Day Emerg. Service." Except for the notice of Lovett and Linder, Ltd., there appears only a statement of areas of law without a stated explanation of the significance of the listing. Lovett and Linder, Ltd. is the only notice which contains a so-called "disclaimer" of expertise.

With respect to the purported disclaimer of expertise, the fact is that Mr. Lovett does claim to be an expert in the matter of worker's compensation law, and other attorneys in his office have appeared in this Court at least purporting to be expert in several of the areas mentioned in the yellow pages notice of the firm, such as social security claims, personal injury, and products liability. The statement of the firm "We make no claim of expertise or specialization in these matters" is untrue.

One firm which has engaged in extensive civil rights litigation and has filed affidavits in this Court in support of motions for class certification and application for counsel fees under the provisions of 42 U.S.C. § 1988, asserting extensive expertise in civil rights litigation, states "Civil Rights" in its notice without any statement in the notice of the significance of the reference to "Civil Rights."

Professor Conrad Hill, a marketing professor at the University of Rhode Island, testified concerning a market study which he conducted in the area of Westerly, Rhode Island. The general conclusion of this survey was that when consumers read a listing of areas of law, the consumers inferred no implied claim of specialization. The sample included thirty-three people, aged twenty to sixty-five, eighteen female and fifteen male. With respect to the statement "We make no claim of expertise or specialization in these matters," of the ten persons polled, three persons liked it, and seven disliked it and found that it sounded shady or that the lawyers sounded unsure of themselves.

The Defendants principally rely on *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The rule is stated: "As with other varieties of speech, it follows as well that there may be reasonable restrictions on the time, place, and manner of advertising." *Id.* at 384, 97 S.Ct. at 2709. *See Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1880, 48 L.Ed.2d 346 (1976). Plaintiffs rely on *Cen-*

*tral Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). In *Central Hudson* the Court held that the government may ban forms of commercial communication more likely to deceive the public than to inform it, but if the communication is not misleading or not related to unlawful activity, the government's power is more circumscribed.

"The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive."

*Id.* at 564, 100 S.Ct. at 2350.

Provisional Order No. 11 of the Rhode Island Supreme Court was adopted as a temporary "guideline" to be followed by any member of the Rhode Island Bar who elects to advertise. At the time of the initial adoption of the Order, Disciplinary Rule 2–101(B) of the rules adopted by the Rhode Island Supreme Court forbade a Rhode Island lawyer from publicizing himself or those affiliated with him "through newspaper or magazine advertisements, a television announcement, display advertisements in city or telephone directories, or other means of commercial publicity . . . ." This form of the rule was adopted by the Court on March 21, 1977. Provisional Order No. 11, as originally adopted, forbade radio or television advertising. This proscription was removed. *In re Petition of Rhode Island Broadcasters Association*, R.I., 404 A.2d 846 (1979).

Provisional Order No. 11 was adopted "Pending revision of appropriate sections of the Code of Professional Responsibility, as required by the decision of the United States Supreme Court in *Bates and O'Steen v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). . . ." Provisional Order No. 11, as modified on October 30, 1979, provides that "[t]he only permissible media for advertisements are: newspapers, periodicals, the yellow pages of the telephone directories, radio and television." (¶ 1). The Order permits the publication of stated routine services (¶ 3); forbids claims concerning the quality of services to be performed (¶ 4); forbids claims of expertise or specialization in any particular field or area of the law (¶ 5); permits publication of the type of services which a lawyer does not wish to undertake (¶ 6); forbids photographs, design work or logos use in advertisements (¶ 7); and limits electronic media advertising requiring that the text be read by a professional announcer "in a dignified manner" and prohibits a personal appearance by a lawyer (¶ 11).

Before the opinion of the United States Supreme Court in *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the policy of the Rhode Island Supreme Court concerning lawyer advertising was stated in its Ethical Considerations 2–9 and 2–10 [2]:

EC–9 The traditional ban against advertising by lawyers, which is subject to certain limited exceptions, is rooted in the public interest. Competitive advertising would encourage extravagant, artful, self-laudatory brashness in seeking business and thus could mislead the layman. Furthermore, it would inevitably produce unrealistic expectations in particular cases and bring about distrust of the law and lawyers. Thus, public confidence in our legal system would be impaired by such advertisements of professional services. The attorney-client relationship is

**2.** Ethical Considerations are "aspirational in character and represent the objectives toward which every member of the profession should strive." American Bar Foundation, *Annotated Code of Professional Responsibility* 3 (1979).

personal and unique and should not be established as the result of pressures and deceptions. History has demonstrated that public confidence in the legal system is best preserved by strict, self-imposed controls over, rather than by unlimited, advertising.

EC–2–10 Methods of advertising that are subject to the objections stated above should be and are prohibited. However, the Disciplinary Rules recognize the value of giving assistance in the selection process through forms of advertising that furnish identification of a lawyer while avoiding such objections. For example, a lawyer may be identified in the classified section of the telephone directory, in the office building directory, and on his letterhead and professional card. But at all times the permitted notices should be dignified and accurate.

*Code of Professional Responsibility*, codified in R. I. Supreme Court Rule 47, R.I.Gen. Laws (1976). Thus, the issues addressed here involve two limitations placed on advertising in telephone directories. One limitation requires that all attorney advertisements be placed exclusively in the section of the yellow pages entitled "Lawyers." The other limitation relates to the content of the advertisement and it prohibits the unexplained listing of areas of the law.

Addressing first the limitation on placement within the telephone directory, it would seem perfectly logical that lawyers would advertise under the heading "Lawyers" and that the public in its use of the "Yellow Pages" would expect to find them there. In the instructions for use of the Yellow Pages, the directory states "Headings are always alphabetical. Think of the heading most likely to carry what you want, flip to it and you'll find names, addresses and phone numbers of business people ready to serve you." The consuming public would therefore expect to find lawyers in the directory under the heading "Lawyers." The Rhode Island Supreme Court, in *Carter v. Lovett and Linder, Ltd.,* R.I., 425 A.2d 1244 (1981), ruled that the only permissible location of an advertisement is in the yellow pages under the head-

ing "Lawyers." The precipitating incident of the Rhode Island Supreme Court's ruling was a three color advertisement located on the inside back cover of the Yellow Pages Directory and not under the heading "Lawyer." As has been said, Defendants in this action seek to justify this limitation on the basis of reasonable restrictions upon the time, place and manner of advertising. *Bates v. State Bar of Arizona,* 433 U.S. 350, 358, 97 S.Ct. 2691, 2696, 53 L.Ed.2d 810 (1977); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. at 1817, 1830, 48 L.Ed.2d 346. In *Virginia Pharmacy Board,* the Court stated:

> "We have often approved restrictions of the kind [time, place, and manner] provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information."

*Id.* at 771, 96 S.Ct. at 1830; *see also United States Postal Service v. Council of Greenburgh Civic Association,* —— U.S. ——, ——, 101 S.Ct. 2676, 2685–86, 69 L.Ed.2d 517 (1981).

■ Provisional Order No. 11 which forbids advertising in telephone directories except advertising in the yellow pages under the heading "Lawyers" is not a content-related regulation. Apart from whatever alternative channels are left open, and whether this requirement is met by permitting publication other than in a specific location within telephone directories itself, the limitation is difficult to justify as one serving a significant governmental interest. There is no doubt that the State may regulate the practice of law, and that the State may regulate advertising by those whom it licenses to practice law, but the question remains whether a regulation which designates a specific and limited area of publication in a directory which enjoys wide public use and dissemination advances any significant governmental interest. Provisional Order No. 11 permits newspaper advertis-

ing yet imposes no limitation as to size or place of the advertisement within the newspaper nor does it direct what color paper the advertisement shall be presented upon. Neither does the limitation distinguish among daily, weekly, Sunday, or so-called "shopper's throw-away" newspapers. The Provisional Order permits radio and television advertising without restricting the location of programming. Clearly, publication upon the inside back cover is not consistent with the format of the directory, arranged alphabetically according to goods and services offered. Hence, it is purely an advertisement and it may not be prohibited simply because it is advertising. *Princeton Community Phone Book, Inc. v. Bate*, 582 F.2d 706 (3d Cir.), *cert. denied*, 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978). The Court in *Bates v. State Bar of Arizona*, specially permitted advertising *qua* advertising. The thrust of that opinion is strongly in the direction of consumer information and away from the effect such advertising may have on professionalism. It rejected the argument that advertising would have an adverse effect upon professionalism, *Bates* 433 at 368–72, 97 S.Ct. at 2701–03, or upon the administration of justice, *Id.* at 375–77, 97 S.Ct. at 2704–05, or adversely affect the quality of legal service, *Id.* at 378–79, 97 S.Ct. at 2706, or creates difficulties of enforcement, *Id.* at 379, 97 S.Ct. at 2706–07. On its facts *Bates* was limited to advertising fees for routine services, but a fair reading of the opinion clearly establishes that advertising by lawyers can not *per se* be prohibited. Since the Provisional Order No. 11 does not purport to limit the size of advertisement the fact that the ad covered the entire inside back cover is not significant. Although the Order, as defined by the Rhode Island Supreme Court requires publication only upon yellow pages, it in no way seeks to control the number of pages or the arrangement of colors which may be printed upon yellow pages.

There is nothing in Provisional Order No. 11 or in the court's opinion in *Carter v.*

*Lovett and Linder, Ltd.*, which explicitly states a significant governmental interest which would provide a basis for restricting placement of advertising in a publication to but one location. Perhaps, it goes without saying that the purpose of the restriction is to exercise the Rhode Island Supreme Court's authority to regulate law practice. *In re Primus*, 436 U.S. 412, 438, 98 S.Ct. 1893, 1908, 56 L.Ed.2d 417 (1978). Certainly, there is an impression that the Rhode Island Supreme Court sought to avoid "a competitive struggle over which attorney or law firm would receive the advertising industry's accolade for having the biggest, best, and in the case at bar, most colorful ad in the category reserved for the legal profession." *Carter v. Lovett and Linder, Ltd.*, 425 A.2d 1245. Unfortunately, there appears to be generally no constitutional infirmity in being the biggest, best or most colorful in almost any commercial activity— including advertising. *Metromedia, Inc. v. City of San Diego*, —— U.S. ——, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). Provisional Order No. 11, as amended, and as construed, exceeds appropriate limitations upon commercial free speech in this instance.[3]

The Court turns now to the issue raised by the profession's growing practice of listing, without qualification, areas of law. It is clear that the explanation provided, that the advertisements merely state areas of a law firm's interest, is simply not so. The fourth step in "7 simple steps—for a successful Yellow Page advertising program" published in the Yellow Pages directory is:

"4. Tell people about your special services . . . . repairs, rentals."

This is precisely what Plaintiffs and members of the class are doing: they are advertising their special services. *In re Mt. Bell Directory Advertising*, 604 P.2d 760 (Mont. 1979). This conclusion is inescapable because of a number of circumstances.

These are advertisements by lawyers. Lawyers know how to explain a statement, yet, the advertisement is published without

**3.** This is not to say that lawyers' offices should henceforth be designated by flashing neon signs or rotating beacons or whatever else ingenuity might suggest as attention getting devices. *Metromedia, Inc. v. City of San Diego*, —— U.S. at ——, 101 S.Ct. at 2892–93.

the claimed limiting explanation that these are areas of the law in which they are interested. If that is really what they had in mind, they would have said so. Being careful lawyers, they, no doubt, wish to escape the implicit suggestion which would be conveyed to the consuming public, that they were not interested in any other types of practice. They do not wish to lose at least the opportunity to either determine whether or not to take the "other" kind of case or make a referral.

In this Court's opinion, the conclusion drawn by the Rhode Island Supreme Court's Disciplinary Board, and adopted by the Rhode Island Supreme Court in *Carter v. Lovett and Linder, Ltd.*, is correct, and, indeed the only sensible conclusion. This is only a covert method of telling the public of their "special services" without any basis to do so. Rhode Island has not as yet adopted any method of certification of specialization although efforts are underway to do so.

The "market study" introduced by Plaintiff suggests only that the broad scope of categories mentioned in the advertising include about all there is to do in law practice, from the consuming public's point of view, hence the primary conclusion that such lawyers are "generalists." The lay mind is also obviously befuddled that any lawyer could be especially erudite in all of the areas mentioned. Plaintiffs' expert witness so testified.

The survey, so-called, is not persuasive. It included only thirty-three people who resided in a town outside the metropolitan area. Three types of advertisements were used: (1) an ad simply stating "so and so attorney, no charge for the first consultation," (2) an ad listing various areas of law, and (3) a disclaimer, that is, an ad listing various areas of law, and then a line saying "we make no claims to be experts or specialists in these areas." With respect to the first and second ads, all persons interviewed said the lawyer was a generalist except that one person said the second ad was a claim for specialization. Significantly, he was a male management science consultant who uses "similar devices" in his solicitations of clients. Of the twenty-one people who

commented on the second or listing form of ad, seven said the "list is clear, specific and helpful and" that the "lawyer is spreading himself too thin."

Of the ten people who commented on the disclaimer form of ad seven disliked it stating "the ad sounds unprofessional and shady"; "the lawyer seems unsure of himself."

In this context, the initial categorization of generalist vs. specialist was at best ambiguous. The expert concluded that those who were surveyed "did not see them misleading." "There were no claims being made for specialization" and later "It seemed to be counter-productive to list too many categories."

The "laundry list" type of ad stating without explanation areas of law practice is misleading. A lay reader and even experts in other professions are expected to conclude that the attorney is especially qualified in the areas of law mentioned. The disclaimer type of ad is even more pernicious in that it deliberately states an untruth, *i. e.*, lack of expertise in areas in which the lawyer believes that he or she is a qualified expert. In both circumstances, it is not only the integrity of the bar that is clearly at risk. Since some and perhaps many members of the public wish to believe what they have suspected all along, this type of misstatement serves to seriously undermine public confidence in the bar as a whole. There are solid, sound, and sensible reasons to prohibit this type of "huckstering." In spite of what some may suspect, the overwhelming number of those who practice law, in this Court's experience, comply willingly and fully with the highest principles of ethical behavior. The few who are primarily concerned with matters other than justice for their clients should not be rewarded by means of unfounded claims to expertise. Nor should the public be misinformed. The constitution does not permit or require commercial public prevarication.

Furthermore, the self-proclaimed expertise or specialization involved in this type of advertising does nothing to assist the members of the public in their quest for the best lawyer for the task. The purpose

of First Amendment protection of accurate consumer information is effectively precluded by claims to unrecognized expertise. The purveyors of this information do not state that they intend their "laundry list" to indicate areas of law in which only they are interested. If they did make that statement, the consumer would indeed be tempted to ask whose interest is to be served, that of the consumer or the purveyor of services. The Government may ban forms of communication more likely to deceive the public than to inform it. *Central Hudson Gas & Electric Corp. v. Public Service Commissioner of New York*, 447 U.S. 557, 563, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980); *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). The rule of the Rhode Island Supreme Court with respect to an unexplained list of areas of the law, comports with the First Amendment. The form of disclaimer ad of Plaintiff Lovett and Linder, Ltd. may appropriately be barred within the commercial speech boundaries of the First Amendment.

■ There remains for discussion, two opinions: *Consumers Union of United States, Inc. v. American Bar Association*, 427 F.Supp. 506 (E.D.Va.1976), *vacated and remanded*, 433 U.S. 917, 97 S.Ct. 2993, 53 L.Ed.2d 1104 (1977) and *Durham v. Brock*, 498 F.Supp. 213 (M.D.Tenn.1980), both of which have considered the issue of the content of lawyer advertising in the "Yellow Pages." *Consumers Union of United States, Inc. v. American Bar Association*, was decided before *Bates v. State Bar of Arizona* was decided by the United States Supreme Court. *Consumers Union* sustained the public circulation of information of one or more fields of law in which the lawyer or law firm "concentrates." The court did recognize that "specialization labels ... are justifiably carefully regulated." *Id.* at 521–22, n. 19. The thrust of *Consumers Union* that total bans on commercial advertising sweep too broadly, is somewhat blunted by the later Supreme Court opinions distinguishing commercial speech from other forms of speech in terms of the extent to which misleading commercial information may be regulated in advance. *See, e. g., Metromedia, Inc. v. City of San Diego*, —— U.S. ——, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The significance of *Consumers Union* to the issues in this action is nil in light of the finding of fact by this Court that the form of information furnished is misleading and the later clearly announced rule that misleading commercial information involving professional advertising may be banned in advance. *Bates v. United States Bar of Arizona*, 433 U.S. at 381, 97 S.Ct. at 2707–08.

*Durham v. Brock*, a post *Bates* opinion struck down a Tennessee ban on statements of areas of practice or specialization except when listing routine legal services accompanied by a fee schedule for such services. That court recognized a need to define "routine legal service." The definition offered is those services "objectively capable of standardization so that any licensed attorney at law is deemed qualified to perform them, and secondly, they are so uniform in the requirements of the service that they vary very little in their performance." *Durham* at 222. The court then observed that "If every field of law were advertised, that would be a truthful, verifiable statement of facts which could not be prohibited under *Bates*." *Id.* at 223 (footnotes omitted). In the abstract this statement reflects the general theory that bar examinations establish a "generalist" type of expertise. In the real world and based upon actual experience, both the profession and the public know that such a statement would not be completely accurate. Since the principal First Amendment concern is the right of the public to know, this Court must respectfully differ with this general conclusion of *Durham* while not differing with the specific conclusion of the court that a requirement that a listing of routine services must be accompanied by a statement of fees is invalid. The *Durham* court does state at 224, that "a lawyer's advertisement which listed only a few legal services or fields of practice would imply expertise therein to all or a part of the lay public and would thereby imply a higher quality of service offered." In this sense, *Durham* is not inconsistent with the conclusion arrived at by this Court.

The issue of listing areas of law is not beyond resolution. One potential solution is a process for certification of specialties. Such a certification would be the type of information upon which the consuming public could rely and from which the public would decidedly benefit.

Insofar as Provisional Order No. 11 seeks to limit the location of advertising within the telephone directory to the heading "Lawyers" in the Yellow Pages, that limitation is declared invalid. Insofar as Provisional Order No. 11 seeks to limit the unexplained listing of areas of law practice and the unexplained listing of areas of law practice when accompanied by a disclaimer that the listing is "not a claim of expertise or specialization," the Order is declared a valid limitation upon lawyer advertising. There is nothing to suggest that relief other than declaratory relief is required, and, therefore, Plaintiffs' prayers for injunctive relief are denied.

Furthermore, Plaintiffs are granted leave to apply for counsel fees in accord with the provisions of 42 U.S.C. § 1988, and Plaintiffs are directed to present a form of judgment.

SO ORDERED.